**In the Interest of R.B., G.B., and P.B., Minor Children,**

**J.B., Father, Appellant.**

No. 12–2260.

Court of Appeals of Iowa.

March 13, 2013.

---

Jacob L. Mason, Ankeny, for appellant father.

Thomas J. Miller, Attorney General, Katherine S. Miller–Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Andrea Vitzthum, Assistant County Attorney, for appellee State.

Laura Lockwood, Des Moines, for appellee mother.

Kathy Miller of the Juvenile Public Defender Office, Des Moines, attorney for minor children.

Mike Bandstra, Des Moines, guardian ad litem for minor children.

Considered by VAITHESWARAN, P.J., and TABOR and MULLINS, JJ.

VAITHESWARAN, P.J.

A father appeals the termination of his parental rights to his three youngest children, born in 2008, 2010, and 2011.

## I. Background Facts and Proceedings

The father's children were removed from his care in February 2012 based on allegations that the three oldest sustained long-term sexual and physical abuse. The youngest three were placed in foster care, and the father had no further contact with them.

Meanwhile, the father fled. The State charged him with sexual abuse and began a nationwide search for him. He was apprehended at his mother's home in Chicago and was returned to Iowa to face charges. At the time of two termination hearings in November 2012, the father was in jail and had yet to stand trial.

On the eve of the first termination hearing, the father filed a motion to continue the hearing on the ground that the termination proceeding impinged upon his Fifth Amendment right against self-incrimination. U.S. Const. amend. V. The father also alleged as grounds for continuance the Department of Human Services' failure to notify his mother of the proceedings, as required by Iowa Code section 232.84(2) (2011).

At the first termination hearing, the juvenile court denied the motion to continue. On the advice of counsel, the father asserted his Fifth Amendment right against self-incrimination and declined to answer any questions. The father's attorney was allowed to make a record concerning the department's failure to notify the father's mother of the proceedings.

Following the hearings, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) (requiring proof of several elements, including proof that parent has not maintained significant and meaningful contact with the child) and (h) (requiring proof of several elements, including proof that a child three or younger cannot be returned to the parent's custody). This appeal followed.

## II. Continuance Motion

The father does not contest the grounds for termination. He focuses on the court's disposition of his motion to continue, arguing: (A) his constitutional "right to be free from self-incrimination was violated when the court denied the motion to continue the termination proceedings until such time the father could testify without the prejudicial effect on the pending criminal prosecution" and (B) the juvenile court should have granted his motion based on the department's failure to notify his mother that the children were removed from his care.

■■■ Motions to continue "shall not be granted except for good cause." Iowa Ct. R. 8.5. Our review of the court's denial of the motion on a non-constitutional ground is for an abuse of discretion, and we will reverse only "if injustice will result to the party desiring the continuance." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct.App. 1996). The concept of justice incorporates a prejudice component, which must be viewed in a pragmatic fashion. *Ragan v. Petersen*, 569 N.W.2d 390, 394 (Iowa Ct. App.1997). Where constitutional rights are implicated, our review is de novo. *See In re N.N.E.*, 752 N.W.2d 1, 6 (Iowa 2008).

■■ **A. Fifth Amendment.** "The Fifth Amendment Self–Incrimination Clause, which applies to the States via the Fourteenth Amendment, provides that no person 'shall be compelled in any criminal case to be a witness against himself.'" *McKune v. Lile*, 536 U.S. 24, 35, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (citation omitted). This provision prohibits a State from imposing substantial penalties "because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *accord In re C.H.*, 652 N.W.2d 144, 150 (Iowa 2002) ("The State may not penalize [a father] for non-compliance with a court order impinging on his right against self-incrimination.").

■■ "[T]he government need not make the exercise of the Fifth Amendment privilege cost free." *Lile*, 536 U.S. at 41, 122 S.Ct. 2017. "Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.* (quotation marks and citation omitted); *C.H.*, 652 N.W.2d at 150 ("[A] person's exercise of a constitutional right *may* indeed have consequences.").

The father asserts that the court's decision to proceed with the termination hearing left him with "a false choice and a harsh result: . . . the termination of parental rights or the prejudice of a pending criminal matter." In his view, his decision to remain silent allowed the State to prove its case for termination with only "minimal evidence or a mere allegation which [was] assumed to be valid."

We question whether the claimed easing of the State's burden by virtue of the father's exercise of his right against self-incrimination amounts to constitutional compulsion. *See Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286–88, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (concluding pressure felt by death row inmate to speak at a clemency hearing and im-

prove his chances for clemency did not constitute unconstitutional compulsion and stating, "It is difficult to see how a voluntary interview could 'compel' respondent to speak. He merely faces a choice quite similar to the sorts of choices that a criminal defendant must make in the course of criminal proceedings, none of which has ever been held to violate the Fifth Amendment"). We need not definitely resolve that issue because, on our de novo review, we find that the record contains more than the State's version of events.

■ First, the record includes a summary of an interview police conducted with the father at the time the sexual abuse allegations came to light. In that interview, the father vehemently denied the allegations and provided a detailed explanation supporting his denial. This summary placed the father's version of events before the juvenile court, mitigating the claimed harsh consequence of his election not to testify.

· Second, the State's key evidence against the father was corroborated by the children's mother, who testified that she saw and heard the father sexually abuse the three oldest children over a period of years. She asserted that the abuse began when the children reached seven years of age and continued for six to eight years, until their removal in 2012. She characterized the sexual abuse as "routine" and acknowledged her failure to intervene.[1]

In sum, the juvenile court did not rely on "a mere allegation which [was] assumed

to be valid," but had access to both corroborating and potentially exculpatory evidence through the father's denials, together with department-generated reports and other evidence.

The father also argues that the court should have postponed the termination hearing until he was available to participate fully in a psycho/sexual examination. In *C.H.,* the Iowa Supreme Court rejected a father's assertion that the department impinged on his right against self-incrimination by requiring him to undergo sexual offender treatment. 650 N.W.2d at 150. The court reasoned that there was no evidence the State required the father to complete any particular sexual offender treatment program or disapproved participation in a program that did not require an admission of guilt. *Id.*

■ In this case, there is no evidence that the department instructed the father to undergo treatment that would require an admission of guilt. Because the department did not insist on a course of action that would interfere with the father's right against self-incrimination, there was no State compulsion, and the Fifth Amendment was not implicated in the father's decision to forgo therapeutic services until his criminal charges were resolved.[2]

We conclude the State did not violate the father's Fifth Amendment right against self-incrimination and, accordingly, the juvenile court appropriately denied the motion to continue to the extent it was premised on this ground.

---

1. At the time of the second termination hearing, the mother was in prison for her failure to protect the children.

2. The father entwines this argument with an argument that the department should have furnished him therapy as part of its reasonable efforts mandate. *See In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000) (stating State is obligated to make reasonable efforts toward

reunification). The reasonable efforts argument is at odds with the father's simultaneous assertion that he did not wish to participate in services until "his criminal matter has been resolved." Notably, the father declined to answer social history questions posed by the department and, following his arrest, declined to speak to the department about any matter.

*B. Notification Provision.* The father next contends the juvenile court failed to notify his mother of the proceedings, as required by Iowa Code section 232.84(2). That provision states:

> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

The notice is to include several items, including "[a] statement that the child has been or is being removed from the custody of the child's parent or parents," and "[a]n explanation of the options the relative has under federal, state, and other law to participate in the care and placement of the child on a temporary or permanent basis." Iowa Code § 232.84(3)(a), (b).

On appeal, the father argues that this notice provision "does not make any judgment, nor does it allow the Department to make any judgment with respect to who receives notice." The State essentially responds that the father's cooperation with the department was a prerequisite to notification under section 232.84(2).

In attempting to resolve these dueling arguments, we note a contextual ambiguity in section 232.84(2). *See State v. Kluesner,* 389 N.W.2d 370, 371 (Iowa 1986) (discussing ambiguity in statutory language). The provision obligates the department to "exercise due diligence in identifying and providing notice to" several categories of relatives. Among them are "adult relatives suggested by the child's parents." The ambiguity relates to the phrase "suggested by the child's parents." That phrase could modify all the listed categories of relatives or it could simply modify "adult relatives."

Ordinarily, qualifying words and phrases refer only to the immediately preceding antecedent. *Id.* at 371; *see also Oberbillig v. West Grand Towers Condo. Ass'n,* 807 N.W.2d 143, 151 (Iowa 2011). Applying this rule, we conclude "suggested by the child's parents" only modifies "adult relatives" and not the categories of relatives preceding "adult relatives." The absence of a comma separating "suggested by the child's parents" from "adult relatives" bolsters the conclusion that "adult relatives suggested by the child's parents" is a single, independent clause. *See Kluesner,* 389 N.W.2d at 371–72.

Section 232.84(2) as a whole does not reveal a contrary intent. *Cf. Fjords North, Inc. v. Hahn,* 710 N.W.2d 731, 737 (Iowa 2006) (declining to apply rule of the immediate preceding antecedent where a contrary intent appeared in the statute). The provision begins by stating "the agency shall exercise due diligence in identifying. . . ." Iowa Code § 232.84(2). The language places the onus on the department rather than the parents to identify relatives subject to notification. The provision next enumerates those close relatives. The statute then broadens the universe of relatives subject to notification to include "adult relatives suggested by the child's parents." This is an additional category of relatives to whom the agency's identification and notification obligation extends; it is not a limitation on the relatives subject to notification. To conclude otherwise would be to read out the department's obligation to identify relatives. A contrary conclusion would also render the categories preceding "adult relatives suggested by the child's parents" superfluous. *See State v. Graves,* 491 N.W.2d 780, 782 (Iowa 1992) ("We avoid statutory construction which renders a part of the statute superfluous or redundant, and instead we presume that each part of the statute has a

purpose."). If the legislature had intended this reading, it could have stated,

> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in ~~identifying and~~ providing notice to ... ~~the child's grandparents, aunts, uncles, adult siblings, and~~ adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

It did not.

Our reading of section 232.84(2) is consistent with other provisions of chapter 232 that obligate the department to make "the least restrictive disposition." *See* Iowa Code § 232.99(4). In the continuum of least restrictive to most restrictive dispositions, the statute lists relative placements as more restrictive than retention of custody by a parent, but less restrictive than placements with the department. *See id.* (stating dispositions listed in sections 232.100 to 232.102 are "in order from least to most restrictive"); *id.* § 232.102(1)(a)(1) (authorizing placement with "[a] parent who does not have physical care of the child, other relative, or other suitable person"); *In re N.M.*, 528 N.W.2d 94, 97 (Iowa 1995) ("The home of a relative is considered less restrictive than placement in a private agency, facility or institution or placement with the department of human services.").

Our reading is also consistent with federal legislation, which requires the State to "consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child." 42 U.S.C. § 671(a)(19). Indeed, the federal provision that section 232.84(2) implements requires the State to provide that "within 30 days after the removal of a child from the custody of the parent or parents of the child, the state shall exercise due diligence

to identify and provide notice to *all* adult grandparents and *other adult relatives of the child (including any other adult relatives suggested by the parents )." Id.* § 671(a)(29) (emphasis added). This provision could not be clearer in its articulation of the scope of the due diligence requirement.

Turning to the facts of this case, a department caseworker conceded she did not notify the father's mother about the proceedings. She testified that the father never told her to consider his mother as a placement option and she "was not provided any contact information with regards to being able to get ahold of her." When asked if she made attempts to get the information, she responded, "I went to the jail to collect social history information from [the father] who refused to see me and did not fill out the social history packet to give me any of that information." She said she "wasn't able to have conversation with him with regards to family members that he would like contacted." She later reiterated, "It was never stated to me that [the paternal grandmother] wanted to be a placement option of these children."

The department employee's reasoning is contrary to the express language of the statute. It was incumbent upon the department to independently "exercise due diligence" in identifying and notifying relatives. The department was not taken off the hook by the father's failure to identify the mother as a potential placement option.

 That said, we recognize there is no better place to begin the search for relatives than with the parents themselves, and we acknowledge the department's efforts to use this avenue were stymied by the father's disappearance and his later refusal to communicate. But these were

minor impediments to tracking down the paternal grandmother, because the department knew the father was apprehended at his mother's house in Chicago. That fact was confirmed when the department employee testified, "That . . . is where [the father] was hiding out when he had left the state of Iowa when he was charged with the abuse." Armed with this knowledge, the employee could have checked the warrant file, the case number of which was included in the record, or communicated with law enforcement authorities who apprehended the father. There is no indication that the employee exercised either option. *See In re S.P.*, 672 N.W.2d 842, 846–47 (Iowa 2003) (stating diligence in the context of parental notification focused on the quality of the search and whether all reasonable means of notification were exhausted).

The employee intimated that she declined to notify the father's mother because she heard the grandmother "had some serious mental health issues." This rationale places the cart before the horse. Relative notification does not turn on whether relatives would ultimately prove to be viable placement options; notification affords the relatives an opportunity to come forward so that it can be determined whether they are viable placement options.

We are left with the question of the appropriate remedy for a violation of section 232.84(2). That provision does not specify a remedy, and the father cites no authority to support his contention that reversal of the termination of his parental rights is the answer. Our standards for grant and review of continuance motions suggest that reversal of the termination decision is not the answer under the particular circumstances of this case.

As noted at the outset, the father filed his motion on the eve of the termination hearing. Under Iowa Rule of Civil Proce-

dure 1.910(1), he had an obligation to file the motion "without delay after the grounds" became known. Under section 232.84(2), the grounds became known "[w]ithin thirty days after the entry of an order . . . transferring custody of a child to an agency for placement." Custody of the children was transferred to the department months before the termination hearing, yet no motion was filed until days before the termination hearing. Significantly, at the time of a pretrial conference almost seven weeks before the first termination hearing, the court filed an order informing the parties that "[n]o continuances [would] be granted on the day of trial except upon a showing of good cause." In the same order, the court stated that the "[f]ather anticipates filing [a] motion to continue." Had the motion been filed shortly thereafter, the court still would have been in a position to order notification of the father's mother without materially compromising the statutory time period preceding termination. *See* Iowa Code § 232.116(1)(e)(2) (requiring removal for at least six consecutive months), (1)(h)(3) (same); *C.B.*, 611 N.W.2d at 495 (requiring us to view statutory time frames with a sense of urgency).

Assuming without deciding that the father has a right to object to a failure to notify the mother of the proceedings, an issue that was neither raised nor decided, the father is hard-pressed to show that he suffered injustice by virtue of the department's failure to notify his mother, where he does not contest the grounds for termination, argue that termination compromised the children's best interests, or argue that an exception to termination applies. *See* Iowa Code § 232.116(2), (3).

■ We conclude the father failed to establish good cause for his belated contin-

uance motion, notwithstanding the department's failure to exercise due diligence in notifying his mother of the proceedings. We further conclude the father suffered no injustice as a result of the department's non-compliance. For these reasons, the district court did not abuse its discretion in denying the continuance motion on this ground.

### III. Conclusion

We affirm the termination of the father's parental rights to these three children.

**AFFIRMED.**