**IN THE COURT OF APPEALS OF IOWA**

No. 16-0313
Filed May 11, 2016

**IN THE INTEREST OF X.O. AND J.O.,**
**Minor children,**

**R.O. and J.O,**
Grandparents/Intervenors-Appellants.

_____

Appeal from the Iowa District Court for Humboldt County, Kurt J. Stoebe,

Judge.

Grandparents appeal the district court's denial of their motion to remove

the department of human services as guardian of their grandchildren.

**AFFIRMED.**

Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, P.L.C., Clarion, for

appellants.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General, for appellee State.

Marcy J. Lundberg of Lundberg Law Firm, Des Moines, attorney and

guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Maternal grandparents appeal the district court's denial of their motion to remove the department of human services as guardian of their grandchildren.

## I.      *Background Facts and Proceedings*

A mother had two children, born in 2012 and 2013.  The second child was born with pulmonary issues and a potentially life-threatening condition known as congenital adrenal hyperplasia, which prevented his body from producing cortisol.   He required interventions by a pulmonary specialist and an endocrinologist.

When the second child was five months old, the department learned the mother had neglected to take him to several medical appointments.  The State filed a child-in-need-of-assistance action.  The district court adjudicated the child in need of assistance and ordered him to remain in the mother's custody under the protective supervision of the department.

This status was short-lived.  Within days, the mother left the children home alone and the district court ordered them removed from her custody.

Although the mother and grandparents lived in northwest Iowa, the children were placed in foster care in Des Moines because, in the social worker's view, there were no homes available outside the Des Moines area.  This was a two-and-a-half-hour drive away from the grandparents.  The children were left in Des Moines after it became apparent that most of the medical specialists involved in the younger child's care were located there.  The department failed to notify the grandparents of the removal.

Three months later, the department filed a report stating the mother "wished to have her parents . . . be considered as a placement option for the children." The department did not place the children with them based in part on the presence of six rescue dogs on their acreage and the endocrinologist's concerns about the grandparents' "absence in the care and assistance of" the children.

The maternal grandmother moved to intervene in the proceedings. The court granted the motion. When no additional action was taken, the grandparents filed a second motion to intervene. The court granted this motion as well. In a subsequent order, the court determined "[i]t would be superfluous to conduct a separate hearing on the movant's request for permanency." The court gave the grandparents "the opportunity to appear" at the "hearing for permanency/termination of parental rights." Around the same time, the children were moved to a second foster home in Des Moines. By this time, ten months had elapsed since the child's removal.

At the termination hearing, the grandparents appeared without an attorney. During the grandmother's cross-examination of the department social worker overseeing the case, the county attorney objected to questions concerning the grandparents' request for placement of the children in their home, asserting the issue was not properly before the court. The court sustained the objection.

Following the hearing, the district court terminated the mother's parental rights and appointed the department to act as guardian of the children.[1] This court subsequently affirmed the termination decision. *See In re J.O.*, No. 15-0256, 2015 WL 1576419, at *2 (Iowa Ct. App. Apr. 8, 2015).

Less than a month after the termination decision was filed, the grandparents again moved to intervene and concurrently filed a motion to remove the department as guardian and custodian. They alleged the department did not serve "as Guardian in the best interest of the children" because the agency "failed to seek appropriate permanent placement for the children or a family placement for the children during the pendency of the CINA cases." They further alleged, "DHS . . . failed to follow through with the request of the Intervenor or the mother for . . . placement of the children with an appropriate family member prior to placing the children in foster care." Inexplicably, hearings on the motion were delayed for seven to ten months.[2] The children remained with the foster parents during this period. Following the hearings, the district court denied the motion. The grandparents appealed.

## II.      *Removal of Department as Guardian/Custodian*

"The juvenile court retains the authority to remove DHS as guardian if the department acts unreasonably or irresponsibly in discharging its duties." *In re S.O.*, No. 13-0740, 2013 WL 3458216, at *2 (Iowa Ct. App. July 10, 2013); *see* Iowa Code § 232.118 (2015). In assessing an application for removal of a

---

[1] The court also terminated the parental rights of the children's fathers.
[2] Some of the delay was attributable to an appeal from the denial of the grandparents' request for a hearing, an appeal that was ultimately dismissed. But this delay does not explain an additional six-month delay before the first scheduled hearing and a subsequent delay of three months before the second scheduled hearing.

guardian a court will consider (1) the reasonableness of the department's actions, (2) the best interest of the children, and (3) whether there has been a substantial change of circumstances. *See In re D.H.*, No. 10-1313, 2010 WL 4484849, at *6-7 (Iowa Ct. App. Nov. 10, 2010).

The grandparents contend the department acted unreasonably and not in the children's best interest by (A) failing to notify relatives of the removal and (B) failing to consider them as a placement option while at the same time placing unreasonable burdens on them and showing bias against them.

*A.    Notice*

Iowa Code section 232.84 provides:

Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, parents of the child's siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

The notice must contain:

a. A statement that the child has been or is being removed from the custody of the child's parent or parents.
b. An explanation of the options the relative has under federal, state, and other law to participate in the care and placement of the child on a temporary or permanent basis. The options addressed shall include but are not limited to assistance and support options, options for participating in legal proceedings, and any options that may be lost by failure to respond to the notice.
c. A description of the requirements for the relative to serve as a foster family home provider or other type of care provider for the child and the additional services, training, and other support available for children receiving such care.
d. Information concerning the option to apply for kinship guardianship assistance payments.

Iowa Code § 232.84(3). The statute "places the onus on the department . . . to identify relatives subject to notification." *In re R.B.*, 832 N.W.2d 375, 380 (Iowa Ct. App. 2013). The department social worker overseeing the case conceded the mother told her she wished to have the children placed with the grandmother. She also conceded the section 232.84 notice was not sent to the grandparents or other relatives. When the guardian ad litem asked her whether the notice would have been a "silly formality" because she was already in touch with the grandparents, she responded, "Yes." A department supervisor also characterized the notice as simply "an option."

To the contrary, formal notice was required "even if the relatives were informally aware of the child's transfer to foster care." *In re N.V.*, ___ N.W.2d ___, ___, 2016 WL 757423, at *5 (Iowa Ct. App. 2016). "The statutorily-prescribed notice would have clarified their options with respect to the child." *Id.* at *6; *see In re N.P.*, No. 12-0805, 2012 WL 3196125, at *2 (Iowa Ct. App. Aug. 8, 2012) ("Had the grandmother received the 232.84 notice with the information the statute requires, she would have been informed of her options to participate in the care and placement of the children. She would have been informed about available assistance and support options. And most importantly, she would have been informed of her options for participating in the legal proceedings."). The grandmother in this case testified that she only learned of these options after she retained an attorney following the termination proceeding. By this time, almost a year had passed since the child's removal. We conclude the department acted unreasonably in failing to notify the grandparents and other relatives of their rights as required by section 232.84.

*B.* *Placement*

The children's guardian has the duty and right "to choose a specific placement for [a child.]" *In re E.G.*, 745 N.W.2d 741, 744 (Iowa Ct. App. 2007). *See also In re D.H.*, No. 12-1387, 2012 WL 5954633, at *4 (Iowa Ct. App. Nov. 29, 2012). There is "a statutory preference for placement of children with relatives during the child-in-need-of-assistance phase of the proceedings." *N.V.*, 2016 WL 757423, at *6; *see* 42 U.S.C. § 671(a)(19) (requiring the State to "consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child"); *see also R.B.*, 832 N.W.2d at 381. There is no such preference after termination. *In re R.J.*, 495 N.W.2d 114, 117 (Iowa Ct. App. 1992); *S.O.*, 2013 WL 3458216, at *1.

The grandparents assert the department acted unreasonably in failing to place the children with them before and after the termination ruling. They cite a number of factors, which we will address together.

The department social worker in charge of the case testified she considered the grandparents as a placement option before termination. While she stated she did not have a good first impression of the grandmother, she agreed to check the home and perform background checks on both grandparents.

As noted, the home check revealed the presence of six rescue dogs on the acreage. Although the grandmother was willing to consign some of the dogs to the mud room and have some of them live outdoors, the social worker said that the dogs would exacerbate the younger child's pulmonary issues. She expressed no such concern with respect to the three cats in the first foster

parents' home.  As for the background checks, she agreed they did not uncover anything that "would have prevented the [d]epartment from moving forward" with placing the children in their home.

Meanwhile, the social worker's doubts about the grandparents prompted her to impose two additional prerequisites to placement: participation in foster care classes and a formal home study.  She also required the grandparents to attend all the second child's medical appointments.

The grandparents delayed participation in the classes, completing them only after the termination hearing.  The home study was also performed after the termination hearing.  As for the medical appointments, the endocrinologist's nurse reported the grandparents only attended three of the twenty-seven scheduled visits.  The grandmother testified that neither the foster parents nor the department notified her of all the appointments and scheduled them at their convenience without consulting her. The social worker responded by recounting the number of hours the first set of foster parents spent addressing the younger child's medical needs and suggested the maternal grandparents were ill-equipped to expend the same number of hours.

On our de novo review, we conclude the department acted reasonably in declining to place the children with the grandparents during the child-in-need-of-assistance proceedings notwithstanding the statutory preference for relative placement at this stage.  While the department social worker's first impression of the grandmother appeared to color her subsequent interactions with the grandparents, we conclude the initial placement decision was justified based on

the younger child's medical needs and the foster parents' proximity to most of his physicians.[3]

We turn to the post-termination placement decision. The grandparents contend the foster care social worker continued to handle the adoption proceedings in contravention of department policy, which requires a case to be transferred to an adoption worker within "45 days from receipt of the order for termination of parental rights." Iowa Dept. of Human Servs. Title 17: Ch. F(1): Permanent Placement Procedures. This violation, they argue, and the social worker's bias against them rendered the placement decision unreasonable. They also suggest their completion of the foster care classes amounted to a substantial change of circumstances.

The foster care social worker stated she remained on the case after termination because of its complexity and her knowledge of the circumstances. We assume without deciding she could circumvent departmental policy in this fashion, and we decline to conclude her decision to participate in the adoption proceeding per se rendered the department's actions unreasonable.

We are less sanguine about certain unsupported representations she made to the adoption team. For example, she reported the grandmother had "not attempted to have more contact with the children or ask[ed] . . . for visits with the children." In fact, the record is replete with evidence of the grandmother's requests for additional time with the children. She (1) asked the social worker "to allow [her] to come for visits with the children"; (2) "called today," wanting "to see

---

[3] The grandparents argue the child's condition was manageable. That is true. But management required three shots a day and regular appointments with the Des Moines medical team, in addition to surgical intervention in Iowa City.

the grandkids"; (3) "contacted [the social worker] asking for visits"; (4) "requested visitation unsupervised for her[self] and her husband"; (5) asserted, "I haven't seen [the older child] since . . . September and [the younger child] since his last doctor's appointment . . . . Can you tell me what you decided and if I can see them"; (6) stated she "did not like that the kids were so far away"; (7) "said she cares about her grandkids so much and wants them to be with her"; (8) said, "I do not want to lose my grandchildren"; and (9) asked, "Can I see them one last time at least?" In the face of this overwhelming evidence refuting some of the foster care social worker's representations to the adoption committee, we conclude she acted unreasonably in the post-termination phase of the proceedings.

That said, the decision to place the children with the foster parents after termination was based on more than the foster care social worker's representations. As noted, the grandparents failed to attend all of the second child's medical appointments and the child's endocrinologist expressed concerns about their engagement with the child's needs. These factors overrode the grandparents' completion of foster care classes, which they allege amounted to a substantial change of circumstances. Because the adoption team relied on these additional factors in declining to place the children with the grandparents, we conclude the foster care social worker's unsupported representations do not render the post-termination placement decision unreasonable.

We are left with the primary consideration—the best interest of the children. By all accounts, both children were thriving in a stable home at the time of termination. And, as noted, the home was close to the younger child's medical

team. Under these circumstances, we conclude the post-termination placement decision was in the children's best interest notwithstanding the foster care social worker's failure to provide the section 232.84 notice and her unsupported representations to the adoption team. *See N.P.*, 2012 WL 3196125, at *3 ("Addressing the failings of the adults in this case by a reversal of the juvenile court's termination order would run counter to the over-arching consideration in all termination of parental rights cases—the best interests of the children."). We affirm the district court order declining to remove the department as guardian or custodian of the children.

**AFFIRMED.**