# IN THE COURT OF APPEALS OF IOWA

No. 18-1177
Filed September 12, 2018

**IN THE INTEREST OF J.B., M.S., and A.S.,**
**Minor Children,**

**R.W. and S.W.,**
    Intervenors-Appellants.

_____


Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.


Intervenors appeal from the juvenile court's order denying their request for placement of the children. **REVERSED AND REMANDED.**


Nicole S. Facio of Newbrough Law Firm, Ames, for intervenors-appellants R.W. and S.W.

James W. Thornton of Thornton & Coy, PLLC, Ames, for mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Shannon M. Leighty of Public Defender's Office, Nevada, guardian ad litem for minor children.


Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**VAITHESWARAN, Presiding Judge.**

Intervenors R.W. and S.W., relatives of three siblings, contend the department of human services failed to make reasonable efforts to keep the three siblings together.

## I.     *Background Facts and Proceedings*

The mother and father of three children, born in 2015, 2016, and 2017, had a long history with the department of human services, which culminated with the termination of the mother's parental rights to several older children.  After the termination, a husband and wife (intervenors R.W. and S.W.) adopted two of the children.  In total, the intervenors were parents of six children.  They were also licensed foster care providers with eight years of experience.

The three siblings born in 2015, 2016, and 2017 were removed from the mother's home due to neglect, unsanitary conditions, and physical abuse of one of the children. The intervenors learned of the removal and offered to take in all three siblings, either as relative placements or as foster-care placements.  The department informed them that if they were seeking a relative placement they would have to resort to the courts.  As for placing them as foster children, the department noted their home was at capacity. The department expressed an unwillingness to grant a variance to accommodate all three children.  R.W. testified, "It's been explained to us that it's just a matter of the number of children in the home."  Two of the three siblings were placed in one foster home, and the youngest sibling was placed in a separate home.

The foster family with the two siblings found themselves unable to accommodate both of them.  At that point, the department granted the intervenors

a variance to take in one of the siblings. The other two siblings remained in separate foster homes. The district court subsequently adjudicated the children in need of assistance.

Meanwhile, the intervenors moved to intervene in the proceedings. They asserted, "As relatives to all three children and the current foster home placement for [one of the children]," they had "a legal right to be considered as a placement for the minor children." They further noted "a strong presumption in favor of placing siblings in the same home."

During the proceedings, the couple offered up their home for weekly or bi-weekly sibling visits and allowed the three children to interact with each other and with their two half-siblings. They also assisted the other foster parents in setting up medical and other appointments, transported those siblings to the appointments, and served as respite care providers when those foster parents were out of town.

The district court granted the intervention motion, reasoning the intervenors were relatives of the three siblings by virtue of the adoption. *See* Iowa Code §§ 232.2(46A), 232.2(52) (2018).[1] The court found separation of the siblings was in their best interests, given the youngest child's bond with his foster parents and the older two children's unmanageable behaviors when they were together at the outset.

---

[1] The court stated the three siblings were "blood relatives of the children adopted by" the intervenors and, accordingly, the intervenors were "relatives of the children." The State does not challenge this determination.

On appeal, the intervenors reiterate they are relatives of the three siblings. They argue the district court "failed to follow Iowa law by not requiring [the department] to make reasonable efforts to place these siblings together in the same placement." On our de novo review, we agree.

## II. Relative Placement

The department is charged with affording relatives priority in the placement decision. *See In re N.V.*, 877 N.W.2d 146, 152 (Iowa Ct. App. 2016) (citing 42 U.S.C. § 671(a)(19)); *In re R.B.*, 832 N.W.2d 375, 381 (Iowa Ct. App. 2013) (same). The department is statutorily required to inform relatives of children's removal and explain the options to participate in the care and placement of the children. *See* Iowa Code § 232.84.[2] Following a dispositional hearing, a court is to make the least restrictive disposition that is appropriate under the circumstances. *See id.* § 232.99(4). Relative placements are among the least restrictive dispositions. *See id.* § 232.102(1)(a)(1).

The State does not dispute that the intervenors are relatives of the three siblings who were removed. Accordingly, they are entitled to a statutory preference in favor of placement with them.

## III. Sibling Separation

Iowa Code section 232.108(1) requires the department to "make a reasonable effort to place the child and siblings together in the same placement." This obligation is "in addition to efforts made by the department . . . to place the

---

[2] The department's advice to the intervenors that they would need to resort to the courts to establish themselves as relatives is questionable in light of section 232.84's notice requirement and the statutory definition of "sibling" and "relative."

child with a relative." If the siblings are not placed together, "the department . . . shall provide the siblings with the reasons why and the efforts being made to facilitate such placement, or why making efforts for such placement is not appropriate." *Id.* § 232.108(2)

The department made no effort to keep the siblings together, notwithstanding the intervenors' offer to house all three children. The department case manager conceded as much. When asked "what efforts . . . the department of human services made to place these children together," she responded, "None." When asked whether the department sought out "any other foster homes that might place these children together" if they deemed the intervenors "inappropriate," she responded, "No."

The case manager found nothing inappropriate with the intervenors' home. She acknowledged sibling visits took place there, and she admitted the children otherwise spent no time together in a home environment. She was asked, "[I]n all the times that [the children have] been having these visits in the home of the [intervenors], have there been any concerns presented to the department or any concerns that have happened during those visits?" She responded, "No." She further admitted she had "no concerns as far as their parenting." Later, she reiterated she had known the intervenors "for years" and "[p]arenting, fostering, interactions, communication, no, there's not issues there." She acknowledged the intervenors were the only individuals who came forward as an option to have the children placed together.

Notwithstanding the absence of issues with the intervenors' home, the case manager testified, "[I]t does make me uncomfortable with adding that many more

children and thinking of the future, not knowing what's going to happen, that type of thing." Her unsubstantiated discomfort in the face of the intervenors' proven track record of appropriate parenting was insufficient grounds to avoid the statutory mandate set forth in section 232.108(1).[3]

Our conclusion is bolstered by the State's failed attempt to ascribe less-than-pure motives to the intervenors. Specifically, the State suggested they wanted all three children to increase their foster care stipend. R.W. categorically rejected this suggestion. He testified, "[I]f someone had said, we will give them to you as relative placement; there's absolutely no stipend; will you take them, we would have absolutely said yes."[4] He noted, "[W]e had the means to take all three. We wished to take all three if there was any way that was possible, which is why we moved forward with the request to place them either as foster children or as a relative placement." As the oldest of eight children, he testified maintaining the sibling relationship was important to him but it was "more important probably for the children themselves." He cited a recent a foster care training course he took, where it was emphasized that "typically sibling relationships are the longest lasting relationships of our lives."

We recognize the preference to keep siblings together is not absolute and our ultimate concern is the best interests of the child. *See In re J.E.*, 723 N.W.2d 793, 800 (Iowa 2006). But the department's only best-interests argument was premised on the bond the two siblings developed with their foster parents, which

---

[3] There may be instances in which the number of children in a home would raise doubts or concerns. This is not one of them.

[4] There is no evidence the department informed the intervenors of "kinship guardianship assistance payments." *See* Iowa Code § 232.84(3)(d).

was an issue of the department's own making. Department personnel had the opportunity to place all three children in the intervenors' home when the children were first removed. They chose not to. In light of the availability of a concededly appropriate home, we conclude the bond that developed between the two children and their foster parents does not trump the obligation to keep siblings together.

Notably, one of the older two siblings shared a close relationship with the brother who was placed with the intervenors. The mother testified the bond between them was "very, very strong." And R.W. testified that the child in their care had matured and mellowed and his behaviors were no longer unmanageable, as they had been at the outset.

As for the youngest child, his foster mother testified her home was the only home the seven-month-old child had known. The biological mother concurred and argued in favor of keeping the child there. But, in our view, the passage of time was not sufficient to justify maintaining the status quo where an appropriate home with the other siblings was available. As the foster mother acknowledged, the youngest child's bond with her could be disrupted at any time if the child were reunified with his parents. As it stood, there were multiple ways to alleviate the disruption. The foster mother conceded the child showed no signs of distress following visits with his siblings and half-siblings at the intervenors' home. There was nothing preventing those visits from being extended gradually to ease the transition. The foster mother also testified she knew the intervenors through church, making ongoing contact with the child feasible.

We conclude the department failed to make reasonable efforts to keep the siblings together as required by section 232.108(1). We reverse and remand for

the department to satisfy its statutory obligation under section 232.108 as well as its statutory obligation to give preference to relatives in the placement decision.

**REVERSED AND REMANDED.**