**IN THE COURT OF APPEALS OF IOWA**

No. 20-1106
Filed October 21, 2020

**IN THE INTEREST OF X.C.,**
**Minor Child,**

**C.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lynn Poschner, District

Associate Judge.


        The mother requests we vacate the juvenile court's order authorizing the

Iowa Department of Human Services to contact relatives of her daughter, X.C., for

possible placement. **AFFIRMED.**


        Jesse A. Macro, Jr. of Macro & Kozlowski, LLP, West Des Moines, for

appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Michael Sorci of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor child.


        Considered by Doyle, P.J., and Mullins and Greer, JJ.

**GREER, Judge.**

This is the mother's second appeal during a child-in-need-of-assistance (CINA) proceeding regarding her daughter, X.C., born in 2017. The basic factual background of this case is accurately summarized in the mother's prior appeal.

> This thirty-seven-year-old mother has a long history of substance abuse, dating back to when she was fourteen. She also has a history of mental-health afflictions and engaging in criminal activity. The family came to the attention of the Iowa Department of Human Services in December 2019 as a result of allegations of familial violence and the kidnapping of the child by a grandparent. The State sought and obtained an order for temporary removal, which was confirmed following a removal hearing. At the adjudication hearing in February 2020, the mother stipulated to adjudication of the child as in need of assistance, and the juvenile court entered an order adjudicating the child as such under Iowa Code section 232.2(6)(c)(2) and (n) (2019). The matter proceeded to a dispositional hearing in March, at which the mother contested continued removal and adjudication. At the time of the hearing, the mother had recently undergone mental-health and substance-abuse evaluations. She declined recommended mental-health treatment. She had also discontinued taking her mental-health medication. She was open to recommended inpatient substance-abuse treatment, but she declined outpatient treatment while she was placed on the waitlist for inpatient treatment. The mother continued to decline drug tests, and she remained homeless and without employment or transportation.

*In re X.C.*, No. 20-0470, 2020 WL 2065968, at *1 (Iowa Ct. App. Apr. 29, 2020).

Following the mother's last appeal, the State petitioned on August 7, 2020 to terminate the mother's parental rights to X.C. On August 12, the State moved to authorize the Iowa Department of Human Services (DHS) to contact X.C.'s relatives to assess them for possible placement. After the juvenile court ordered the authorization, the mother appealed, seeking a vacation of the juvenile court's August 13 order. She argues it was an abuse of discretion for the court to authorize DHS to contact relatives for placement, because Iowa Code section 232.84 (2020)

only permits DHS to contact family members within thirty days of an order transferring custody. Here, the mother asserts the thirty-day notice period began on December 13, 2019—the date of the order of removal from the mother. In essence, the mother argues because the motion was untimely, the juvenile court lacked legal authority to authorize DHS to contact relatives. But first, the State argues that the mother did not preserve error on this issue, because she failed to file a post-ruling motion raising her objections with the court. "As a general rule, an issue not presented in the juvenile court may not be raised for the first time on appeal." *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App.1994); *accord Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). If a party presents an issue to the court, but the court does not rule on that issue, "the party raising the issue must file a motion asking the court for a ruling in order to preserve the issue for appeal." *Meier*, 641 N.W.2d at 538–39. To find that error was preserved, "the record must at least reveal the court was aware of the claim or issue and litigated it." *Id.* at 540. We note that the order was issued on August 13, one day after the State filed its motion. Rather than file a request to enlarge findings and address the issue, the mother simply filed a notice of appeal on August 27. The juvenile court had no opportunity to rule on the mother's argument. Under these circumstances, we find her claim of error is not preserved. But even assuming error had been preserved, the claim is without merit.

"Generally, our review in CINA proceedings is de novo." *In re A.H.*, No. 16-0994, 2016 WL 4544291, at *1 (Iowa Ct. App, Aug. 31, 2016). "However, when an issue requires statutory interpretation, our review is for correction of errors at law."

*Id.* (citing *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014)). In relevant part, Iowa

Code section 232.84(2) states

> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, parents of the child's siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

Section 232.84 has been interpreted to impose "a mandatory duty upon DHS to

give notice to the relatives listed in the statute." *A.H.*, 2016 WL 4544291, at *3.

DHS has no discretion to refuse performing its statutory duty to notify relatives of

a child's removal. *In re N.V.*, 877 N.W.2d 146, 152 (Iowa Ct. App. 2016) (finding

that DHS acted improperly in refusing to notify relatives that the child in interest

was removed from the mother's care). "The only exception found in the statute is

when family or domestic violence is present." *A.H.*, 2016 WL 4544291, at *3.

According to the State;

> X.C.'s mother objected to DHS engaging in a dialogue with these relatives in order to explore possible placement. Out of an abundance of caution, DHS sought express permission from the juvenile court to discuss issues related to the child in need of assistance case with inquiring relatives and to explore relative placement options.

And based on the motion for authority to contact relatives, the State alleged that

the mother refused to sign a release allowing DHS to contact the relatives who

came forward after the disposition hearing. So while it is true that more than thirty

days had passed between the initial removal and issuance of the order in question,

it does not follow that the court erred in entering an order that authorized DHS to

perform a mandatory statutory duty. The mother argues that the court did not have

legal authority to enter this order, but she misses the mark because DHS did not need an order from the court to contact relatives in the first place if the mother had cooperated.

The mother argues that we should read section 232.84 as creating an exclusive thirty-day window for DHS to contact relatives for potential placement after a child is removed from the home. But she offers no support for reading the statute as cutting off DHS's statutory duty thirty days after removal of a child from a parent's custody, and we find none in the case law. Likewise, we have no information on this record to know if these were relatives known to DHS within the first thirty-days after the removal, but in any event, it appears the mother's actions are obstructing contact with the relatives. *See In re R.B.*, 832 N.W.2d 375, 380–82 (Iowa Ct. App. 2013) (noting the father's disappearance and later refusal to communicate stymied the efforts of DHS to contact the grandmother for placement). It might be a different story if the mother was arguing that DHS violated its statutory duty by failing to exercise due diligence in locating and providing timely notice to relatives of the removal. *See id.* (finding section 232.84(2) required DHS to exercise due diligence to identify adult relatives of the child but where, on the eve of an uncontested termination hearing, the father objected his mother had not been contacted, he could not show he suffered any injustice). But that is not the case here and if it were, we could require DHS to provide those relatives notice even at this stage of the proceedings. *See id.*

We also note that other provisions of chapter 232 obligate DHS to seek "the least restrictive disposition." *See* Iowa Code § 232.99(4). Because the duty to contact adult relatives for placement is mandatory and the effort to obtain a least

restrictive placement supports the goal of considering the least restrictive placement for the child, we find the juvenile court's authorization to be warranted.

Thus, we affirm and uphold the court's order authorizing DHS to contact relatives for possible placement of X.C.

**AFFIRMED.**