# IN THE COURT OF APPEALS OF IOWA

No. 20-1694
Filed August 4, 2021

**IN THE INTEREST OF S.S.,**
**Minor Child,**

**T.W., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, District Associate Judge.

A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**

Jonathan M. Causey of Causey and Ye Law, P.L.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kayla Stratton of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Greer, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**SCOTT, Senior Judge.**

A mother appeals the termination of her parental rights to her child, born in 2020, pursuant to Iowa Code section 232.116(1)(g) and (h) (2020).[1]  She argues the juvenile court erred in not placing the child with relatives instead of in foster care, challenges the sufficiency of the evidence supporting the grounds for termination, asserts termination is contrary to the child's best interests, requests application of the permissive exception to termination contained in section 232.116(3)(c) based on the closeness of the parent-child bond, and asks for an additional six months to work toward reunification.

## I.     Background

The child was born in March 2020.  Shortly thereafter, the State filed a child-in-need-of-assistance (CINA) petition and an application for temporary removal of the child based on the mother having her parental rights terminated as to four other children in June and August 2019 due to her unresolved substance-abuse issues.  Since having her parental rights terminated to the other children, the mother provided at least two positive drug tests when attending prenatal appointments.  There were also concerns for domestic violence perpetrated by the putative father against the mother.[2]  The child was eventually diagnosed with fetal alcohol syndrome and has resulting medical issues and special needs.  The mother largely denied consuming alcohol during her pregnancy and denied the child has fetal alcohol syndrome, asserting the Iowa Department of Human Services (DHS)

---

[1] The parental rights of all putative fathers were also terminated.  No father appeals.

[2] Paternity testing later confirmed this putative father was not the biological father.

convinced or persuaded the pediatrician to make such a diagnosis "just to make life hard for" her. The juvenile court entered an order for temporary removal. The court declined to place the child in the care of the maternal grandmother, citing her history of substance-abuse-related charges. Instead, the court placed the child in the legal custody of DHS for placement in foster or shelter care. Following a formal removal hearing, the court confirmed removal and its decision the maternal grandmother would not be a suitable placement. In June, the juvenile court entered a CINA adjudication pursuant to Iowa Code section 232.2(6)(c)(2) and (n). In light of the mother's refusal to undergo drug testing, the court found the mother's statements about not using drugs and alcohol lacking in credibility and concluded those issues continued to pose a risk to the child if placed in the mother's care. The mother requested the child be placed with a maternal uncle, and the court directed DHS to explore maternal relatives for placement. The court also directed the mother to comply with drug testing.

By the time of the dispositional hearing in July 2020, the mother had yet to meaningfully engage in recommended substance-abuse treatment, mental-health treatment, or domestic-violence programming, and she was still not providing requested drug screens. The mother reported her lack of engagement was due to medical issues, which she never substantiated with medical documentation despite being ordered to do so. DHS had investigated the maternal grandmother as a potential placement but had concerns about her insight into the mother's substance abuse, mental health, and domestic violence. DHS was also concerned with placing the child in the maternal grandmother's home, as the mother resided

in the home as well. DHS also investigated the maternal uncle but concluded he did not understand or believe the ongoing concerns as to the mother.

By the time of the permanency hearing in September, the mother had yet to meaningfully engage in services. She was also not consistently participating in visitations. At the permanency hearing, she agreed to submit to drug testing the same day. The court ordered her to do so and advised if the mother missed the test, it would be considered positive. The mother ultimately evaded this drug test as well. The maternal grandmother was still refusing to participate in DHS's efforts to explore her as a placement option, and DHS had concerns about the maternal uncle's ability to care for a medically needy child. As a result of the lack of progress, DHS recommended the initiation of termination proceedings. At the permanency hearing, the mother requested a six-month extension. Based on the mother's lack of participation in services and insight into the concerns permeating the proceedings, the court denied the request and directed the State to file a termination petition, which the State had already done.

The matter proceeded to a termination trial in November, after which the juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h). The mother appeals.

## II.    Standard of Review

Appellate review of orders terminating parental rights is de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's

safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Analysis

### A. Relative Placement

The mother faults the juvenile court for not placing the child with the maternal grandmother or uncle during the proceedings despite her requests for the same. We agree with the mother that relative placement is preferred. *See* 42 U.S.C. § 671(a)(19); Iowa Code § 232.84(2); *In re R.B.*, 832 N.W.2d 375, 381 (Iowa Ct. App. 2013). But we also agree with the juvenile court and State that declining to place the child with these relatives was reasonable under the circumstances and consistent with the child's best interests. As to the grandmother, she was defiant and resistant to DHS's investigation of her as a possible placement. Also, the mother lived in the grandmother's home, and her unresolved substance-abuse and mental-health issues rendered the home unsuitable, especially in light of the grandmother's failure to recognize those reasons for the need for the child's removal from the mother's care. As to the uncle, he also lacked insight into the mother's issues, and he moved into the grandmother's home during the proceedings as well. He was also slow to engage with visitation with the child and assist providers in approving him as a placement. There were also reasonable concerns about the uncle's knowledge of, and ability to serve, the child's special needs. We affirm the juvenile court's refusal to place the child in relative care.

B.	Sufficiency of Evidence

The mother challenges the sufficiency of the evidence supporting both of the statutory grounds for termination. "[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to focus on Iowa Code section 232.116(1)(h). As to that provision, the mother only challenges the State's establishment of the final element—that the child could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that the child cannot be returned to parental custody at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

At the termination trial, the mother denied needing treatment of any kind. And when asked whether she accepts any responsibility as to why the child was removed from her care, the mother answered in the negative. The mother denied continuing a relationship with the original putative father, with whom she shared a relationship fraught with domestic violence. However, at the time of the termination hearing, she was still maintaining frequent contact with him while he was in jail. One phone call between the mother and putative father was made the day before the termination hearing and was recorded. The recording was admitted as evidence. During the conversation, the mother exhibited severely slurred speech and was oftentimes incoherent, and the father accused her of being intoxicated. The severity of the mother's slurred speech can only be interpreted as a state of severe, nearly deadly, inebriation. The mother also became unresponsive for a

large portion of the conversation, despite the putative father's repeated questioning for several minutes of what was happening on her end of the line. A conclusion that the mother passed out during this portion of the call would be a fair inference. Service providers testified to similar behavioral indicators, slurred speech, on the part of the mother. On the criminal side, the mother also expected her deferred judgment on a conviction of neglect or abandonment of a dependent person to be revoked shortly after the termination hearing. She also had pending charges of theft and identity theft.

This mother is clearly afflicted by alcoholism, and perhaps addiction to other substances. We acknowledge alcoholism and other addictions are diseases, but the mother refuses to recognize she is under their control or acknowledge she needs treatment to address them. The mother failed to meaningfully participate in services throughout the proceedings, and her honesty in relation to a substance-abuse evaluation mere days before the termination hearing is highly suspect. We are able to conclude the child could not be returned to the mother's care based on her substance-abuse issues alone, but her mental health and inability to recognize the harm to children caused by domestically violent relationships serve as compounds to hammer that finding home.

Upon our de novo review of the record, we find the evidence clear and convincing that the child could not be returned to the mother's care at the time of the termination hearing, and we find the evidence sufficient to authorize termination under section 232.116(1)(h).

C.    Best Interests

The mother asserts termination is contrary to the child's best interests.  She really only argues "she was a minimally adequate parent."  We disagree.  In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  As noted, the defining elements of child's best interests are safety and need for a permanent home.  *H.S.*, 805 N.W.2d at 748.  "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child."  *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)).

Here, the mother has been given ample time to get her affairs in order and this child's best interests are best served by providing permanency and stability now.  *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))).  The mother squandered her chance at regaining custody, taking only miniscule steps at the same, and the child should not have to wait any longer for permanency; he is entitled to immediate constant, responsible, and reliable parenting.  *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).  Because termination followed by adoption will satisfy this child's need for a permanent home, we conclude termination is in his best interests.

D.     Statutory Exception

The mother requests application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c), which allows the juvenile court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  We first note the application of the statutory exception to termination is "permissive, not mandatory."  *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)).

The mother presented little evidence, if any, of the existence of a parent-child bond, let alone one that would result in detrimental effects upon termination.  *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (noting parent bears burden to establish exception to termination).  Any bond that does exist can only be characterized as limited given the child's young age and removal from the mother's care basically his entire life.  We therefore decline to apply the statutory exception to termination.  Alternatively, we conclude application of the exception would be contrary to the child's best interests.

E.     Extension

The mother requests additional time to work toward reunification.  If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b).  Iowa Code § 232.117(5).  Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period."

Based on the mother's track record in the face of termination of her rights to this child and her other children, we are unable to conclude the need for removal from the mother's care would no longer exist after an extension, and we decline her request for an extension.

## IV.    Conclusion

We affirm the termination of the mother's parental rights.

**AFFIRMED.**