# IN THE COURT OF APPEALS OF IOWA

No. 22-1166
Filed November 17, 2022

**IN THE INTEREST OF N.L.,**
**Minor Children,**

**B.L., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District
Associate Judge.

A mother appeals the juvenile court's denial of her motion to continue and
termination of her parental rights.  **AFFIRMED.**

Teresa M. Pope of Branstad & Olson Law Office, Des Moines, for appellant
mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney
General, for appellee State.

ConGarry Williams, Des Moines, attorney and guardian ad litem for minor
child.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**

A mother, Brooke, appeals the termination of her parental rights to a two-year-old child. She challenges the statutory ground for termination, requests additional time, and argues termination Is not in the child's best interests. She also contends the juvenile court's denial of her motion to continue the termination hearing was an abuse of discretion. After our independent review of the record, we find the termination ground was supported, additional time was unwarranted, and termination Is in the child's best interests.[1] We also find no abuse of discretion in the court's denial of a continuance. So we affirm.

## I. Facts and Prior Proceedings

This family has been involved with the Iowa Department of Health and Human Services (DHHS) since before Na.L.'s birth in October 2019. Na.L.'s three older siblings were removed from Brooke's care in 2018.[2] A younger sibling, No.L., was born in June 2021. Because of Brooke's methamphetamine use, the juvenile court removed Na.L. from her custody and adjudicated him as a child in need of assistance (CINA) in October 2020. He was placed with a family friend, where he has remained since.

---

[1] We review termination-of-parental-rights proceedings de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). We are not bound by the juvenile court's findings of fact. *Id.* But we give them weight, especially in assessing witness credibility. *Id.* Our foremost attention is to the child's best interests. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

[2] The older three children were briefly placed with their father, Jeffrey, in 2018, and then returned to both parents. They were removed again in February 2020 because of Brooke's methamphetamine use. The juvenile court terminated Brooke's parental rights to the older children two weeks before terminating her rights to Na.L. At the time of that termination, No.L. was Brooke's only child with whom she still had a legal tie. But he had been adjudicated as a CINA and placed with foster parents.

Brooke has a long history of substance-abuse and mental-health concerns. Her drug tests throughout this case have not demonstrated a trend toward sobriety. She refused or avoided testing several times. But in 2021, she entered residential substance-abuse treatment—with baby No.L. in her care. Then, in February 2022, the mother left the center without letting anyone know where she was taking No.L. They were eventually located at an apartment Brooke had rented. Brooke was visibly intoxicated. Also in the apartment were Jeffrey and another man whom Jeffrey admitted was the parents' drug dealer. Police removed No.L. from the parents' custody. The baby suffered injuries to his head and shoulder while in the care of his impaired mother, resulting in a founded child abuse assessment. Brooke later confessed that she had a relapse that day, using methamphetamine and marijuana.

The record also reflects Brooke's struggles with domestic violence and mental health. Shortly after the children were removed, an argument between Brooke and Jeffrey required a call to police. Brooke reported Jeffrey assaulted her. Both parents have repeatedly violated no-contact orders. They deny continuing their intimate relationship. Brooke was ordered to attend mental-health therapy but was discharged due to nonattendance. She has several diagnosed but untreated disorders. Her attendance and performance at visitations has been lackluster according to service providers. And she is unable to have visits at her apartment due to fire damage that is awaiting repair.

In mid-May 2022, shortly before the termination hearing, the DHHS worker transported the parents to their drug testing appointments, where two unusual events took place. First, the mother refused to provide a hair sample for a hair stat

test, though she later agreed. Second, the father confessed to the DHHS worker that Brooke gave him a small bottle containing "clean" urine. The drug examiner tested the bottle and confirmed it contained no illegal substances. The mother's urine test was also negative for drugs. But the hair stat test came back positive for methamphetamine and amphetamine.

The mother did not appear at the termination hearing; the record does not include a reason for her absence. The court terminated her rights to Na.L. under Iowa Code section 232.116(1)(h) (2022). Brooke appeals.[3]

## II. Analysis

### A. Motion to Continue

Brooke first argues the district court abused its discretion by denying her request to continue the termination hearing. She sought the continuance because several State's exhibits were filed three days before the hearing, despite an order that all exhibits be filed seven days in advance. We review a motion to continue for abuse of discretion. *M.D.*, 921 N.W.2d at 232. An abuse occurs when the grounds for the denial are clearly untenable or unreasonable. *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014). We reverse only if injustice to the moving party will result. *In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013).

When moving to continue, Brooke's counsel stated she had not had a chance to look at the late filings or contact her client. Despite being aware of the date, Brooke did not attend the hearing. The court denied the request, citing the statutory timeframes and focusing on the child's best interests and need for

---

[3] The court also terminated Jeffrey's rights to Na.L. He does not participate in this appeal.

permanency. Still, upon objection, the court refused to admit several late reports. Three exhibits, though untimely, were admitted. Brooke argues the late filing of those exhibits justified a continuance. The first exhibit was a court-appointed-special-advocate report, to which she did not object. And the other two exhibits were hair-stat test results from mid-May, which were not available to DHHS until that day. The juvenile court found good cause to admit the results, which show Brooke tested positive for amphetamine and methamphetamine.[4] Brooke was aware of the outstanding test, and both parties received the results on the same day. The juvenile court acted reasonably by admitting test results that all the parties were waiting on. No injustice resulted from their admission. We find no abuse of discretion.

### B. Statutory Ground for Termination

Brooke next contends the juvenile court erred in terminating her parental rights under Iowa Code section 232.116(1)(h). That ground requires proof that the child (1) is three years of age or younger, (2) has been adjudicated in need of assistance, (3) has been removed for a specified time, and (4) cannot be returned to parental custody "at the present time." Iowa Code § 232.116(1)(h). She challenges only the last element. *Id.* § 232.116(1)(h)(4). Brooke argues the State did not offer clear and convincing evidence that the child could not have been returned to her custody "at the time of the termination hearing or within a reasonable period of time." But the "within a reasonable period of time" language does not appear in the statutory grounds, and we interpret "at the present time" to

---

[4] A social worker also testified to the results.

mean at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

She points out that, although domestic violence was a concern at the start of the case, no evidence was presented that it remained a concern. And she brings up her efforts at substance-abuse treatment. The record shows she has been engaged in services for four years involving five children. Yet the substance-abuse concerns remain. She discharged early from treatment this February, left without telling anyone her whereabouts, and was intoxicated while caring for her infant, which caused him injuries. She tried to tamper with drug tests by providing false urine samples. And she tested positive for illegal drugs about one week before the termination hearing. True, she has not suffered domestic violence recently, but she has not completed counseling to deal with her past exposure to abuse. And she appears to maintain a relationship with Jeffrey, who assaulted her. She also has not consistently engaged in mental-health services. Further, although not her fault, her home is not in a safe condition for children due to the recent fire damage. So she could not safely resume custody of Na.L. at the time of the hearing. We affirm termination on this statutory ground.

**C. Request for More Time**

Brooke next challenges the juvenile court's refusal to give her more time to work toward reunification. Under Iowa Code section 232.117(5), the court may order an extension of permanency for up to six months under section 232.104(2)(b) as an alternative to terminating parental rights. *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June 3, 2020). Such an extension is appropriate if the court can point to "specific factors, conditions, or expected behavioral

changes" that justify believing the need for removal from parental care would no longer exist after that time. Iowa Code § 232.104(2)(b).

Brooke emphasizes her substance-abuse treatment and individual therapy. She admits lapses in her participation in services but attributes some of that to the fire damage to her home and "cancelation of visits by the in-home worker." While Brooke's home might be ready within six months, she has not in the last four years resolved the substance-abuse and mental-health challenges that prevent her from being a safe parent. Given her history of repeated relapses and positive drug tests, we do not believe the need for removal will no longer exist in six months.

## D. Best Interests of the Child

As a final argument, Brooke contends it is not in Na.L.'s best interests to terminate her rights. In assessing best interests, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Brooke cites her participation in services and positive interactions with Na.L. But the record shows her engagement with services has been inconsistent. And taking care of a two-year-old full time requires more focused parenting than Brooke demonstrated in supervised visitations.

On the other hand, we may also consider "whether the child has become integrated into the foster family to the extent that the child's familial identity is with the foster family, and whether the foster family is able and willing to permanently integrate the child into" their family. Id. § 232.116(2)(b). The foster parent has been caring for Na.L. most of his life. The social worker testified he calls the foster

parent "mommy" and looks to her for safety and comfort. The foster parent is willing and able to adopt Na.L. and is committed to maintaining his contact with his siblings, as well as his biological parents, so long as they are sober. So, in both the short- and long-term view, termination of Brooke's parental rights to Na.L. is in his best interests.

**AFFIRMED.**