# IN THE COURT OF APPEALS OF IOWA

No. 18-1193
Filed September 12, 2018

**IN THE INTEREST OF A.R., B.R., A.M., and R.T.,**
**Minor Children,**

**S.R., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Stephanie Forker Parry, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Jessica R. Noll of Deck Law, PLC, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Michelle M. Hynes, Public Defenders Office, Sioux City, guardian ad litem for minor children.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

A mother appeals the termination of her parental rights. We find there is clear and convincing evidence in the record to support termination of the mother's parental rights and termination is in the children's best interests. We affirm the decision of the juvenile court.

## I. Background Facts & Proceedings

S.T.R. is the mother of R.T., born 2004; A.M., born 2006; B.R., born 2012; and A.R., born 2014. S.R. is the putative father of B.R. and A.R. S.T.R. and S.R. will be collectively be referred to as the parents. Z.M. is the father of R.T. and A.M.

On October 15, 2016, the Iowa Department of Human Services (DHS) investigated a report of the parents' use of methamphetamine, transient life style, domestic violence, and child abuse of R.T. and A.M. by S.R.[1] The older three children were found at the mother's parents' house in Sioux City with the oldest child left in charge; the parents and A.R. were not present. R.T., A.M., and B.R. were removed and placed with a maternal aunt and uncle. A.M. and B.R. both tested positive for the presence of methamphetamine, as did S.R.

The mother absconded with A.R. from October 15 until November 28. The State attempted to locate the mother, including checking S.R.'s address in Nebraska and at her parents' house. S.R. told the court he did not know where the mother and A.R. were, but he maintained daily contact with her and they married on November 9 in South Dakota. The mother later testified she stayed at

---

[1] Illinois child protective services had previously opened an investigation into the family, but the family then left the state. DHS filed founded child abuse reports of all four children by S.T.R. and S.R. for failure to provide proper supervision, bruises to R.T. and A.M., and presence of illegal drugs in A.M. and B.R.

her aunt's house in South Dakota during that period. A petition to terminate the mother's parental rights to the older three children was filed November 22, 2016.[2] On November 28, 2016, the mother appeared at a removal hearing, surrendered A.R. to DHS, and submitted to drug testing, which came back negative. A.R. was placed in foster care.

B.R. was placed in the same foster care home with A.R. beginning in December. R.T. and A.M. continued to live with their maternal aunt and began having visitation with Z.M. The visitations progressed, and R.T. and A.M. were placed in the home of Z.M. and his parents in May 2017. R.T. and A.M. repeatedly expressed a desire to not see their mother to DHS workers and therapists.

On January 9, 2017, the court adjudicated the children as in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n) (2016). The parents contested the State of Iowa's jurisdiction over the children, but the district court found it had jurisdiction and we affirmed. *In re A.R.*, No. 17-0598, 2017 WL 2665118, at *3 (Iowa Ct. App. June 21, 2017).[3]

Throughout the CINA proceedings, the mother exhibited a pattern of starting treatment, cooperating with DHS and court requests, and sometimes splitting up with S.R. prior to a court hearing, then reverting after the hearing—stopping treatment, failing to follow through with services, and seeing S.R. again. She was generally uncooperative with DHS, refusing to sign timely waivers for DHS to access evaluations or complete necessary documents. She refused to sign

---

[2] The termination was stayed and then later dismissed after the mother returned.
[3] The parents named a small town in Nebraska, over two hours from Sioux City, as their home.

waivers so the children could receive necessary medical attention. Visitations were suspended multiple times and were halted altogether in November 2017.

The mother and S.R. were arrested multiple times,[4] spent time in jail, did not always cooperate with drug and alcohol testing, sporadically complied with recommended or ordered evaluations and treatments regarding substance abuse or mental health, and continued substance abuse throughout the eighteen month period. The parents established residences hundreds of miles from the children in multiple states, the mother following S.R. to his distant job sites rather than staying close to the children. S.R. was often combative, erratic, argumentative, and occasionally threatening to state workers throughout the proceedings. Both parents continuously shifted blame to others, repeatedly denied any wrongdoing, and generally exhibited an inability to see anything harmful about their actions.

On February 6, 2018, the State filed a petition to terminate the parents' rights. The mother entered substance-abuse treatment in March 2018.

On April 3, R.T. attempted to run away from home with another minor, texting the mother, who picked them up with S.R. Rather than going to the mother's putative home or the home of other family members in the area, the parents took the children over state lines, an hour and a half south into Nebraska to stay with a friend of the mother's. S.R. was in the vehicle, and he spent time at the friend's home. The mother told R.T. and R.T.'s friend to tell their parents and guardians where they were, but she made no effort to speak with R.T.'s father or

---

[4] At the time of the hearing a felony warrant from the state of Missouri was active for the mother, and she had a pending warrant in Arkansas for failure to appear in court relating to a felony arrest in early October 2016.

grandparents or with the friend's parents. She did not contact DHS until the next day and then dropped the children off at her parents' house the day after that.

The court held a permanency review and termination hearing on April 10. The court heard testimony from the mother, her aunt, and R.T. Z.M. was represented at the hearing, and S.R. did not appear in person or by counsel. The mother testified she lived with her aunt, had not had a job in eight years, and had been separated from S.R. since January, when they were arrested while driving in a stolen vehicle. She was in substance-abuse treatment and testified to being sober for one month. The mother testified she was not in mental-health treatment, and did not need any. She was uncertain of her future relationship with S.R.; she testified she would be there for him if he needs her and wants to make sure he recovers, admitting her co-dependency issues with him. She also claims to be able to protect the children and keep them safe. Her aunt testified the mother had not spent any night the previous week at the house. R.T. testified he thought the mother would be able to protect him and the other children and asked to return to the mother.

On June 27, the court terminated the mother's parental rights to the children under Iowa Code section 232.116(1)(d), (f) (for R.T., A.M., and B.R.), (h) (for A.R.), and (i) (for R.T., A.M., and B.R.) (2018).[5] Custody of R.T. and A.M. remains with Z.M. under DHS supervision; A.R. and B.R. were transferred to the custody of DHS for adoptive placement. The mother appeals.

---

[5] S.R.'s parental rights were terminated to A.R. under section 232.116(1)(d) and (h); his rights to B.R. were terminated under section 232.116(1)(d), (f), and (i). He does not appeal.

## II.     Standard of Review

The scope of review of termination-of-parental-rights proceedings is de novo.  *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  Clear and convincing evidence is needed to establish the grounds for termination.  *In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006).  Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence.  *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002).  The paramount concern in termination proceedings is the best interests of the children.  *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003).

We review the court's denial of the motion for a continuance for abuse of discretion. *See In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013).

## III.     Request for Continuance

The mother requested a continuance of the termination hearing due to having newly-appointed counsel.  "The decision to grant or deny a motion for continuance rests in the sound discretion of the trial judge."  *State v. Artzer*, 609 N.W.2d 526, 530 (Iowa 2000).  "A motion for continuance shall not be granted except for good cause."  Iowa Ct. R. 8.5.  "[W]e will reverse the denial of a continuance only 'if injustice will result to the party desiring the continuance.'"  *R.B.*, 832 N.W.2d at 378 (quoting *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996)).  "The concept of justice incorporates a prejudice component, which must be viewed in a pragmatic fashion."  *Id.*

We note this was the fourth appointment of counsel for the mother.  The mother asked her first counsel to withdraw in November 2017, and her second filed a motion to withdraw at the mother's request on March 16, 2018.  The mother did

not reapply for counsel until March 29, despite a court order to apply by March 23 and a hearing scheduled on March 30. Her first counsel was reappointed on her request, but that counsel requested to withdraw due to the prior breakdown in the relationship. The fourth counsel was appointed one week prior to the termination hearing, on April 3.

The district court found the mother's requests for counsel to withdraw and for new court-appointed counsel to be a delay tactic. The court noted the mother had been served the termination petition on February 9 and had two months to prepare. The court also noted it had granted the mother two continuances since service of the termination petition—for a February 13 permanency hearing and a March 30 hearing on jurisdiction and preliminary matters.

We conclude the grounds for the continuance filed by the mother stem from the actions of the mother. The mother had two months' notice of the termination hearing and chose to change counsel less than one month prior to the hearing. The juvenile court may look at a parent's past performance in determining whether to grant a continuance. *See In re T.D.H.*, 344 N.W.2d 268, 271 (Iowa Ct. App. 1983). The court's decision was not unreasonable under the circumstances, and we find the court did not abuse its discretion when it denied the motion to continue.

## IV. Sufficiency of the Evidence

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on subsection 232.116(1)(f) for R.T., A.M., and B.R., and (h) for A.R.

Subsection (f) allows the court to terminate parental rights where a child four years or age or older has been adjudicated CINA, has been out of the parent's custody for twelve of the last eighteen months, and there is clear and convincing evidence the child cannot be returned to the parent's custody. Iowa Code § 232.116(1)(f). Subsection (h) is the same with an age requirement of three years old or younger and only requiring removal for six of the last twelve months. *Id.* § 232.116(1)(h). The age, adjudication, and removal requirements have been met for all four children.

The mother claims she is able to resume care of the children. She was sober at the time of the termination hearing, had a suitable home for the children with her aunt, and had separated from S.R. The mother testified she had no means of support and was with S.R. one week prior to the hearing when she was contacted by R.T. Not only did the mother see R.T. unsupervised against the court's order, she took him out of state to a place where he knew no adult other than the mother and S.R., rather than the home she claimed to have established for the children. The aunt whose home the mother claimed as her suitable placement for the children testified the mother had not stayed a single night in the past week. We find there is clear and convincing evidence in the record the children cannot be returned to the mother's care pursuant to Iowa Code section 232.116(1)(f) and (h). We affirm the juvenile court's order.

## V. Best Interests of the Children and Exceptions

The mother claims termination of her parental rights is not in the children's best interests. Even if a statutory ground for termination is met, a decision to terminate must still be in the best interests of a child after a review of section

232.116(2). *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). In determining the children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *P.L.*, 778 N.W.2d at 39. Once the State has proven a ground for termination, we cannot deprive children of permanency on the hope the parent will someday learn to parent and provide a stable home. *P.L.*, 778 N.W.2d at 41.

The mother has not shown she has established a safe and stable home for herself, much less for the children. She had not stayed in the home she testified was her home for the children in at least a week. Less than a week before the termination hearing, she knowingly helped R.T. and a second minor run away from home, including placing R.T. in close proximity to his past abuser. Immediately after this incident, R.T. changed from wanting his mother's rights terminated to wanting to live with her and his maternal grandparents. The court specifically found the mother was unable to protect the children and her recent actions exposed him to risk. We find it is in the children's best interests to terminate the mother's parental rights.

The mother claims the court should not terminate her parental rights due to her strong bond with the children. *See* Iowa Code § 232.116(3)(c). Alternatively, the mother argues her rights as to R.T. and A.M. need not be terminated because they are in the custody of a relative, their father. *See id.* § 232.116(3)(a).

Throughout the CINA and termination proceedings, the mother has demonstrated little ability to place the best interests of the children first, placing her

relationship with S.R. above her bond with the children and their mental, emotional, and physical needs. R.T. and A.M. refused to see or talk with the mother for almost the entire eighteen months of removal, belying the "strong bond" claimed by the mother. The mother refused permission for B.R. to receive needed medical procedures for over six months, wanting to wait until B.R. returned to her custody for the procedure, despite negative consequences to B.R.'s health. The children have thrived in stable homes and school since their removal. At the time of the termination hearing, the mother had not seen B.R. and A.R. in five months, with no detrimental effects to them. We do not find a closeness of the parent–child relationship.

The father of R.T. and A.M. requested the mother's rights be terminated. The mother has not shown any ability to co-parent with Z.M. The mother had not even spoken with him in over a year, and she testified they did not have a good relationship. We find the circumstances here do not merit applying the exception section 232.116(3)(a), and that doing so would only subject these children to further custodial litigation.

We agree with the juvenile court's decision to terminate the mother's parental rights.

**AFFIRMED.**