# IN THE COURT OF APPEALS OF IOWA

No. 19-0069
Filed March 20, 2019

**IN THE INTEREST OF S.P.,**
**Minor Child,**

**A.W., Mother,**
　　　　Appellant.

**T.P. Jr., Father,**
　　　　Appellant.

_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

A mother and father appeal the juvenile court decision terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Ryan D. Gerling of Cray Law Firm, Burlington, for appellant mother.

Trent A. Henkelvig of Henkelvig Law Office, Danville, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Brent Ruther of Aspelmeier, Fisch, Power, Engberg & Helling, PLC, Burlington, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

A mother and father appeal the juvenile court decision terminating their parental rights. We find the mother did not show the Iowa Department of Human Services (DHS) failed to act with due diligence in contacting relatives, she does not have standing to challenge the juvenile court's decision to not permit the paternal grandmother to intervene, and she did not request additional services in a timely manner. The father improperly attempted to join the first two issues raised by the mother. We affirm the juvenile court's decision terminating the parental rights of the mother and father.

## I.     Background Facts & Proceedings

T.P., father, and A.W., mother, are the parents of S.P., born in 2015. The child was removed from the parents' care on April 25, 2018, due to reports the mother was using and selling methamphetamine in the home. The child was placed in foster care. The child was adjudicated to be in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) (2018). The parents continued to use illegal drugs.

Despite requests from DHS, the parents initially did not provide any information about relatives of the child. On September 18, the paternal grandfather contacted DHS to inquire about the child. From the paternal grandfather DHS compiled a list of relatives. The parents then agreed to provide information about some additional relatives. In October, the mother was charged

with possession with intent to deliver and the father was in jail.[1]  In a permanency order, the juvenile court ordered the State to initiate termination proceedings.

The paternal grandmother filed a motion to intervene in the juvenile court proceedings.  The court denied the request to intervene, finding the paternal grandmother had not regularly spent time with the child and was not bonded with her.  The court also found it had "considerable concerns regarding [the paternal grandmother's] protective capacities and her ability to recognize and assist in the treatment of [S.P.] in dealing with her traumatic childhood."  The foster parents also filed a motion to intervene, and this request was granted by the juvenile court.

The State filed a petition for termination of parental rights.  On January 3, 2019, the juvenile court terminated the parents' rights under section 232.116(1)(h).  The court found, "The parents now find themselves in no better place than at the beginning of this case, struggling with methamphetamine usage and unstable mental health, with no stable home or income and living with each other, without having dealt with their domestic violence issues."  The court concluded termination of the parents' rights is in the child's best interests and none of the exceptions in section 232.116(3) should be applied in this case.  The mother appealed and the father filed a document he designated as a cross-appeal.

II.     **Standard of Review**

Our review of termination-of-parental-rights cases is de novo.  *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012).  "There must be clear and convincing evidence of the grounds for termination of parental rights."  *In re M.W.*, 876 N.W.2d 212, 219

---

[1]  The father had pending charges of assault on a peace officer, driving while barred, and interference with official acts.

(Iowa 2016). Where there is clear and convincing evidence, "there are no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

### III. Mother's Appeal

**A.** The mother claims the State did not act diligently in notifying relatives of the CINA proceedings, as required by section 232.84. She states because relatives were not contacted in a timely fashion, steps were not taken to place the child in the least restrictive placement. *See* Iowa Code § 232.99(3).

Section 232.84(2) provides:

> Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, parents of the child's siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

In order to place children in the least restrictive placement, DHS needs to identify and contact relatives in order to afford the relatives an opportunity to come forward as possible placement options. *In re R.B.*, 832 N.W.2d 375, 382 (Iowa Ct. App. 2013).

We have previously noted a parent would be aware within thirty days after the removal of a child whether DHS had complied with the statute by notifying relatives. *Id.* The mother did not raise this issue until the present appeal. The juvenile court did not rule on the issue in the termination order, other than to note, "the Department did send out relative notices after many inquiries to both parents."

While we question whether the mother preserved error on this issue, to the extent it has been properly raised, we conclude DHS acted with "due diligence" in sending notice as required by section 232.84. Furthermore, even if DHS had acted improperly, it is not clear the correct remedy would be reversal of the order terminating the mother's parental rights. *See id.*

**B.** The mother claims the juvenile court should have granted the paternal grandmother's motion to intervene. We conclude the mother does not have standing to challenge the court's ruling denying the motion to intervene by the paternal grandmother. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (noting a father did not have standing to raise an argument on behalf of the mother "in an effort to ultimately gain a benefit for himself, that is, the reversal of the termination of *his* parental rights").

**C.** The mother claims the State did not engage in reasonable efforts to reunite her with the child. She asserts the State should have provided her with family-centered services. She also states she should have been given more time to participate in inpatient treatment for substance abuse.

"The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *Id.* If a parent requests additional services and is not satisfied with DHS's response to the request, "the parent must come to the court and present this challenge." *Id.* Furthermore, a challenge to the sufficiency of services must be made prior to the termination proceedings. *Id.* at

148. "[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *Id.*

We find the mother did not challenge the services provided to her prior to the termination hearing, and therefore, has waived her claims regarding reasonable efforts. *See id.* In addition, we note the mother was offered family safety, risk, and permanency services and it was her decision not to seek treatment for her substance abuse problems while the CINA case was pending.

We affirm the juvenile court's decision to terminate the mother's parental rights.

## IV. Father's Appeal

The termination order was filed on January 3, 2019, and gave notice to the parties an appeal must be filed within fifteen days of the order. *See* Iowa R. App. P. 6.101(1)(a). The mother timely filed an appeal on January 10, 2019. The father filed what he designated as a cross-appeal on January 18, 2019. His notice was timely, as it was filed on the fifteenth day after the juvenile court's order. *See id.* The father also filed a "Response to Petition on Appeal," which set out facts in relation to the father. The father did not raise any independent issues, however, stating he joined in the first two issues raised by the mother. The Iowa Supreme Court, on its own motion, ruled, "Whether the father's cross appeal is proper will be submitted for consideration with the appeal."

Under Iowa Rule of Appellate Procedure 6.108, if a party filed the wrong form of review "and the appellate court determines another form of review was the proper one, the case shall not be dismissed, but shall proceed as though the proper form of review had been requested." *See Noll v. Iowa Dist. Ct.*, 919 N.W.2d 232,

233 (Iowa 2018) (treating a notice of appeal as a petition for writ of certiorari). We determine the father's "cross-appeal" should be treated as an appeal of the juvenile court decision terminating his parental rights.

In addition, a misnomer in the caption of a motion is not material. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 879 n.1 (Iowa 2014). This is because "we treat a motion by its contents, not its caption." *Lamasters v. State*, 821 N.W.2d 856, 863 (Iowa 2012) (quoting *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002)). Thus, we find the father's "Response to Petition on Appeal," should be considered a petition, as required by Iowa Rule of Appellate Procedure 6.201.[2]

Rule 6.201(2), addressing petitions in termination appeals, provides, "A party may not join in a petition on appeal that another party files separately." The father does not raise his own issues on appeal, but joins in with the mother on the first two issues raised in her petition. Where a party improperly attempts to join in another party's petition on appeal we do not consider the issues. *See In re L.A.*, No. 18-2200, 2019 WL 719057, at *1 n.1 (Iowa Ct. App. Feb. 20, 2019). Moreover, even if we were to consider the father's issues, we have already ruled against the mother on the same two issues and would reach the same result in regard to the father.

On appeal, each parent needs "to advance their own reasons on appeal why, considering the juvenile court's findings regarding their individual strengths

---

[2] Although we determine the father's "Response to Petition on Appeal," should be considered a petition under rule 6.201, we note his filing does not substantially comply with the requirements for the contents of a petition. *See* Iowa Rs. App. P. 6.201(1)(d), 6.1401-Form 5. The father does not set out any argument or legal authority for the issues he raises but lists only the issues in his petition. *See id.*

and weaknesses, their separate parental rights should not be terminated." *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005). We affirm the juvenile court's decision terminating the father's parental rights.

**AFFIRMED ON BOTH APPEALS.**