# IN THE COURT OF APPEALS OF IOWA

No. 19-0515
Filed June 5, 2019

**IN THE INTEREST OF G.W.,**
**Minor Child,**

**G.W., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph Seidlin, Judge.

A father appeals the termination of his parental relationship with his three-year-old son. **AFFIRMED.**

Edward S. Fishman of Hopkins & Huebner, P.C., Adel, for appellant father.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Karl Wolle of Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, C.J., and Vaitheswaran and Tabor, JJ.

**TABOR, Judge.**

A father, Gregory, appeals the juvenile court's order terminating his parental relationship with his son, G.W., who was born in November 2015. The court found Gregory had a "mounting history of domestic violence" and untreated problems with alcohol and substance abuse, which hindered his ability to parent G.W. On appeal, Gregory contends the State did not prove statutory grounds for termination, reasonable efforts to reunify, or that termination is in G.W.'s best interests. Gregory also alleges the court should have denied the petition to terminate based on the closeness of the parent-child relationship. In the alternative, he asks to delay permanency for six months.

After an independent review of the record, we share the conclusions of the juvenile court.[1] Gregory is not in a position to be G.W.'s caretaker at the present time—he admitted that at the termination hearing. And because his remaining arguments muster no traction, we affirm.

I. **Facts and Prior Proceedings**

Gregory has engaged in a pattern of domestic violence over the past decade. It was his assault on G.W.'s mother, Monica, in the child's presence that drew the attention of the Iowa Department of Human Services (DHS) in July 2017.[2] The parents also were using controlled substances and drinking alcohol to excess.

---

[1] We review child-welfare cases de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016) (citing *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Clear and convincing evidence must support the juvenile court's conclusions. *Id.* (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)). Clear and convincing evidence means we harbor no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *Id.* (citing *D.W.*, 791 N.W.2d at 706).
[2] Monica, who suffers from depression, voluntarily gave up her rights to G.W. at the termination hearing.

Gregory was on probation for cocaine possession at the time of the assault. The court approved the DHS decision to remove G.W. from the parents' care and placed the toddler with his maternal grandmother.

For the next fourteen months, Gregory did little to improve his parenting skills or his relationship with G.W. He had limited contact with G.W. He participated in none of the DHS-recommended services and continued to use drugs frequently and drink alcohol heavily on a daily basis. As the juvenile court observed: "He was relying on Monica to reunite with [G.W.] rather than make the needed changes himself."

Then, in September 2018, things took another turn for the worse. Police investigated another attack by Gregory against Monica. She told officers Gregory grabbed her by the throat with both hands and strangled her until she lost consciousness. He struck her several times in the face. And he strutted around the apartment with a gun, threatening to kill her. Officers noticed marks on her neck and an open cut on her upper lip. They found a .22 caliber magnum revolver in the couple's bedroom. Gregory faced charges of felony domestic abuse strangulation and spent the next three months in the Polk County jail awaiting trial. He was granted pretrial release in late December to attend residential substance-abuse treatment in Fort Dodge.

In October 2018, the DHS placed G.W. in the same household as his three older half-brothers, who live with their father and his girlfriend. The case worker reported G.W. was happy with his siblings and well-adjusted to that home.

At the termination hearing in January 2019, Gregory invoked his Fifth Amendment privilege on all of the assistant county attorney's questions about the

assault on G.W.s mother.  In doing so, he exuded a hostility to the process and a fundamental misunderstanding about the impact of his criminality on his relationship with his son, saying "Can we get to the fact that it's about my child?  It's not about me and this criminal charge, like for real."  He also complained that the State "badgering" him about his criminal charges was "counterproductive to what he was trying to do for [himself] right now."

The juvenile court terminated parental rights in a February 2019 order.  Gregory now appeals.

## II.    Analysis

### A.  Statutory Grounds

To terminate parental rights, the juvenile court must first find clear and convincing evidence supporting one of the grounds for termination listed under Iowa Code section 232.116(1) (2018).  *See D.W.*, 791 N.W.2d at 706.  In G.W.'s case, the court found the State met its burden under paragraphs (e) and (h).  To affirm, we need only find sufficient proof under one of those paragraphs.  *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

We focus on paragraph (h).[3]  Gregory makes a barebones assertion in his petition on appeal that he disagrees with the juvenile court's sufficiency finding.  Yet at the termination hearing he agreed with the assistant county attorney that he

---

[3] Termination under this subsection requires proof the child (1) is three years of age or younger; (2) has been adjudicated a child in need of assistance pursuant to section 232.96; (3) has been removed from the physical custody of the child'     s parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the custody of the parents as provided in section 232.102 at the present time.

could not assume custody of G.W. at the time of the hearing.[4]  *See A.M.*, 843 N.W.2d at 111 (describing "present time" as the time of the hearing).  Gregory faced domestic abuse charges and was only beginning to address his aggression and substance-abuse issues.  Because no element of section 232.116(1)(h) is truly at issue, we affirm on this ground.

## B.  Best Interests and Parent-Child Bond

Having found clear and convincing evidence to support terminating Gregory's parental rights under section 232.116(1)(h), we turn to his claim that ending the father-son relationship is not in G.W.'s best interests.  In making the best-interests determination, we give primary consideration to G.W.'s safety, the best placement for furthering his long-term nurturing and growth, as well as his physical, mental, and emotional condition and needs.  *See In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010) (quoting Iowa Code § 232.116(2)).  Safety and the need for a permanent home mark the "defining elements in a child's best interest."  *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

After considering the pertinent factors, we are convinced waiting for his father to deal with alcoholism, substance abuse, and his penchant to commit domestic violence is not in G.W.'s best interests.  *See P.L.*, 778 N.W.2d at 38 ("A stable, loving homelife is essential to a child's physical, emotional, and spiritual well-being." (citation omitted)).

Gregory next contends the closeness of the parent-child relationship should preclude termination.  *See* Iowa Code § 232.116(3)(c).  The record does not

---

[4] Gregory resisted having his rights terminated but testified, "I want to give my parental rights to my mother."

support that contention. Even before he went to jail, Gregory had little contact with G.W. The case worker testified G.W. "probably recognizes Greg" but she did not believe they had a strong connection. Any bond between G.W. and Gregory does not outweigh the grounds for termination.

## C. Reasonable Efforts

The DHS is required to "make every reasonable effort" to return the child home as quickly as possible consistent with the child's best interests. Iowa Code § 232.102(7); *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000). We focus on the services provided by the State and the parent's response, not on services the parent now claims the DHS failed to provide. *C.B.*, 611 N.W.2d at 494.

Gregory contends the DHS did not make reasonable efforts to reunite the family because the agency did not facilitate visitation with G.W. while Gregory was in jail, failed initially to send notices to paternal relatives, and did not assist Gregory in obtaining health insurance and transportation. The termination ruling addressed only the jail visitation issue, finding the DHS decision not to set up interactions was reasonable considering the factors in *In re S.J.,* 620 N.W.2d 522, 524 (Iowa Ct. App. 2000). The DHS worker testified she did not recommend visitation because Gregory did not have contact with G.W. for "a significant amount of time" before he was incarcerated. She said the jail had no visiting room and communication through a monitor would not have been "productive." She also considered the seriousness of the offense for which Gregory was incarcerated.

The worker's conclusion that video communication would not have been meaningful appears unsubstantiated. Other witnesses testified to having pleasant "video chats" with the child. But on balance, like the juvenile court, we accept the

DHS decision not to offer Gregory visitation while he was awaiting trial for a violent assault on G.W.'s mother.

On the issue of relative notice, Iowa Code section 232.84(2) requires the DHS to "exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, and adult relatives suggested by the child's parents" within thirty days after the entry of an order transferring custody of a child to an agency for placement. *See In re R.B.,* 832 N.W.2d 375, 380 (Iowa Ct. App. 2013) (holding statutory language "places the onus on the department rather than the parents to identify relatives subject to notification"). The case worker testified she did not send timely notices to Gregory's relatives because G.W. "was placed with a stable family member already." It appears the worker misunderstood her obligation under the statute. The assistant county attorney acknowledged at the hearing it was "unfortunate" relative notice did not happen in this case, but insisted the State had still met its reasonable efforts requirement.

In *R.B.*, our court grappled with the appropriate remedy for a violation of section 232.84(2). *Id.* at 382. We reasoned "the father is hard-pressed to show that he suffered injustice by virtue of the department's failure to notify his mother" because he did not contest the grounds for termination. *Id.* The situation is comparable here. Gregory does not explain how notice would have aided his ability to reunite with G.W. A similar disconnect exists with Gregory's mention of insurance and transportation issues. Because he does not fully explore the import of these services, we decline to grant relief on the issue of reasonable efforts.

**D. Delay in Permanency**

As a final issue, Gregory asserts he "should have been granted a six-month extension rather than having his rights terminated." But he offers no supporting rationale for his assertion.

To continue placement for an additional six months, Iowa Code section 232.104(2)(b) requires the juvenile court to determine the need for removal will no longer exist at the end of the extension. In considering a delay in permanency, the court must bear in mind "if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005). We do not favor delaying permanency for G.W. Gregory has a long track record of domestic violence and substance abuse. He has not come close to resolving these concerns. The record does not show six more months of services would prevent termination.

**AFFIRMED.**