**IN THE COURT OF APPEALS OF IOWA**

No. 20-0748
Filed July 22, 2020

**IN THE INTEREST OF H.T.,**
**Minor Child,**

**W.T., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

　　A father appeals the termination of his parental rights to his child. **AFFIRMED.**

　　Judy Johnson of JDJ Law Firm PLLC, Des Moines, for appellant father.

　　Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

　　Alexandra Nelissen, Des Moines, attorney and guardian ad litem for minor child.

　　Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

A father appeals the termination of his parental rights to his child, born in 2017. When the child was one year old, his mother voluntarily placed him with friends. The child remained in their care throughout the proceedings.

In time, the mother gave birth to another child. Following the birth, the mother tested positive for several illegal substances. The department intervened, and the newborn, as well as the older child who is the subject of this appeal, were formally removed from the mother's custody.

Paternity testing subsequently confirmed the identity of the older child's father. He was in prison, having violated his special sentence of lifetime parole following his guilty plea to third-degree sexual abuse of a minor. He remained incarcerated throughout the child-in-need-of-assistance proceeding and termination hearing. He did not expect to discharge his sentence until 2023. He essentially conceded he was not in a position to have the child returned to his custody at the time of the termination hearing but argued his relatives were willing and able to serve as caretakers.

The juvenile court determined that "none of the Father's proposed relatives would be an appropriate placement." The court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(h) (2019), which requires proof of several elements including proof the child cannot be returned to the parent's custody.

On appeal, the father does not challenge the ground for termination cited by the juvenile court. He contends (I) the court should have placed the child in a guardianship with one of his relatives as an alternative to termination;

(II) termination of his parental rights was not in the child's best interests; and (III) the department of human services failed to timely notify and investigate his relatives as potential placement options.

## I.     *Placement with a Relative*

Iowa Code section 232.117(3)(c) authorizes post-termination placement of a child with several entities or persons, including a "relative."  In finding the father's relatives inappropriate, the juvenile court noted that an aunt who came forward tested positive for cocaine; the father's sister failed to provide a drug screen and did not "testify regarding her willingness to assume custody"; and the father's grandmother lived with the relative who tested positive for cocaine, was "69 years old and would be in her mid-80's when [the] child would graduate from high school," and apparently intended to allow the father to assume custody "after he was released from prison," notwithstanding his conviction for sexual abuse of a minor. The father takes issue with these findings.

The juvenile court's finding that the aunt was not an appropriate placement option was supported by the record.  The father conceded as much.

The court's finding as to the father's sister was more problematic.  The father identified her as a potential placement months before the termination hearing.  The department social worker overseeing the case stated he performed a background check, which "did not" disclose any concerns.  He also checked the abuse registry, which disclosed no concerns.  He spoke to the sister and told her he would be requesting a drug screen.  He acknowledged that he failed to follow up until a few days before the termination hearing.  At that point, the sister told him she could not come in for the drug test because of work obligations.  The social

worker identified a time on the next day. The sister said she would have to check. That was the extent of the department's investigation into the sister before the first day of the termination hearing.

The termination hearing did not end after the first day. It continued for another two days over a seven-week period. On the third day, the department employee testified the sister had yet to come in for a drug test. That testimony supports the juvenile court's finding that the child could not be placed with the father's sister.

We are left with the father's grandmother. She testified that, although she lived with the aunt who tested positive, she had plans to relocate in the immediate future. In her words, "I'm intending to get my own place, so I can have more room and everything." She also stated that the department employee overseeing the case did not contact her about having the child placed with her until sixty days before the final day of the termination hearing. At the same time, she minimized the culpability of her grandson in the crime that led to his conviction.

The department employee testified the grandmother was excluded as a placement option because of her unwillingness to acknowledge her grandson's guilt. We are persuaded the department's rationale was reasonable. The father was precluded from having any contact with minors and, although the grandmother testified she would abide by the no-contact order, her comments about her grandson suggested otherwise.

On our de novo review of the record, we conclude the juvenile court appropriately declined to place the child in a guardianship with one of the father's relatives.

## II.    *Best Interests*

Termination must be in the child's best interests.  *See* Iowa Code § 232.116(2).  The father contends the child's best interests were not served because the connections with his family were "severed."  But the severance was of his own making.  The father committed a crime against a child.  As noted, he was ordered to have no contact with any children until he completed treatment, which he had yet to begin.  When asked whose fault it was that he did not have a chance to raise his son, he responded, "Ultimately, it's my fault that I have not taken full consideration—or full responsibility."  On our de novo review, we conclude termination was in the child's best interests.

## III.    *Reasonable Efforts*

The department has an obligation to make reasonable efforts to reunify parent and child.  *See In re C.B.*, 611 N.W.2d 489, 492–93 (Iowa 2000).  At the time of the termination hearing, the father informed the juvenile court that he wished to challenge the department's reasonable reunification efforts and, specifically, its failure to pursue placement options with his relatives.  The father tangentially raised the question of the department's statutory obligation to notify relatives of the proceedings.  We will begin with that obligation.

Iowa Code section 232.84(2) states:

Within thirty days after the entry of an order under this chapter transferring custody of a child to an agency for placement, the agency shall exercise due diligence in identifying and providing notice to the child's grandparents, aunts, uncles, adult siblings, parents of the child's siblings, and adult relatives suggested by the child's parents, subject to exceptions due to the presence of family or domestic violence.

The "language places the onus on the department rather than the parents to identify relatives subject to notification." *In re N.V.*, 877 N.W.2d 146, 151 (Iowa Ct. App. 2016) (quoting *In re R.B.*, 832 N.W.2d 375, 380 (Iowa 2013)).

The department failed to provide the required notice to the father's relatives until after the termination hearing began. Nonetheless, under the particular circumstances of this case, reversal of the termination decision is not required. *See R.B.*, 832 N.W.2d at 382.

During the child-in-need-of-assistance proceeding, the father asked the court to place the child with his aunt. The juvenile court ordered the department to "meet with [the aunt] by the end of the week regarding possible placement" and ordered the aunt to "provide a drug [test] upon DHS request." The department complied with the order, as did the aunt and, as noted, the drug test was positive for cocaine. The aunt was ruled out as a placement option.

In the same order denying placement with the aunt, the juvenile court advised the parents to identify services needed to facilitate reunification and warned them that "failure to identify a deficiency in services may preclude the party from challenging the sufficiency of services in a termination of parental rights proceeding." The order was filed five months before the termination hearing.

The father did not file a motion to have the department pursue other relative placement options until the first day of the termination hearing. The State argued his request came too late, an argument the juvenile court accepted.

The State's argument, which it reprises on appeal, was well taken. We have often stated requests for services must be made during the child-in-need-of-assistance proceeding. *See id.* ("Custody of the children was transferred to the

department months before the termination hearing, yet no motion was filed until days before the termination hearing.").  The pronouncement makes sense where the parent is challenging the department's failure to provide the required relative notification because that notice contains a detailed description of the relatives' options and obligations with respect to the child.  *See N.V.*, 877 N.W.2d at 151. An early challenge also would afford the department an opportunity to correct the oversight before the case proceeds to termination.  *See R.B.*, 832 N.W.2d at 382 (noting that if a motion to continue for failure to comply with the relative notification requirement had been filed sooner, "the court still would have been in a position to order notification of the [relative] without materially compromising the statutory time period preceding termination").

We recognize "the reasonable efforts obligation runs until the juvenile court has entered a final written order of termination."  *In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019).  We also recognize "[t]he State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* at 527 (quoting *C.B.*, 611 N.W.2d at 493).  But where the goal is to establish and maintain a relationship with family members that may endure through termination and beyond, the sooner the challenge to the absence of notification the better.  *Cf. N.V.* 877 N.W.2d at 148 (citing relatives' significant involvement with the child before the department became involved and citing relatives' motions to intervene in the child-in-need-of-assistance proceedings and their reference to the statutory notice requirements).

By the time of the termination hearing, the department's reasonable-efforts obligation was limited to "documentation of the steps taken to make and finalize

an adoption or other permanent placement." *L.T.*, 924 N.W.2d at 528–29. The opportunity for the child to develop a relationship with his paternal relatives was effectively foreclosed. And the ability of the department to fully investigate the relatives for possible placement was limited. Under these circumstances, we conclude the department did not violate its reasonable-efforts mandate by proceeding with its plan to continue permanent placement of the child with the family who cared for him from his infancy.

We affirm the termination of the father's parental rights to the child.

**AFFIRMED.**