# IN THE COURT OF APPEALS OF IOWA

No. 20-1442
Filed June 16, 2021

**IN THE INTEREST OF A.G.,**
**Minor Child,**

**C.J., Mother,**
        Appellant,

**T.G., Father,**
        Appellant.

_____


Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS AND REMANDED WITH DIRECTIONS.**

Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, for appellant mother.

Audra F. Saunders of Anderson & Taylor, PLLC, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Shannon M. Leighty of the Public Defender's Office, Nevada, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., Schumacher, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**CARR, Senior Judge.**

A mother and a father separately appeal the termination of their parental rights to their child. The mother contends she received ineffective assistance, and the father contends termination is contrary to the child's best interests. Both seek to avoid termination under Iowa Code section 232.116(3)(c) (2020) due to the closeness of the parent-child bond. We review their claims de novo. *See In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

Juvenile court proceedings began in July 2019, when the child was eighteen months old. The juvenile court removed the child from the home because the mother tested positive for methamphetamine while on probation and the father was incarcerated in Wisconsin. Both the mother and the father have a long history of drug use and criminal activity, and the mother has been named the perpetrator in multiple founded reports of child abuse.

The juvenile court adjudicated the child to be in need of assistance (CINA) in December 2019. It found that despite the services offered to the mother, the child remained at risk:

> [The mother] refuses to engage in recommended mental health services offered to her through probation services. She continues to abuse methamphetamine. She has refused offers of services for substance abuse and mental health from the Iowa [Department of Human Services (DHS)]. The court finds she is incapable of recognizing her own needs let alone those of [the child] and that without juvenile court oversight, [the child] remains at risk of harmful effects. Consequently, the court finds that its aid is necessary.

The father consented to the CINA adjudication.

The evidence presented at the May 2020 permanency hearing showed little changed after the CINA adjudication.

> The parents have made no meaningful effort to engage in services that this court finds are reasonably calculated to assist them in reunifying with their child. [The child] is two years of age and deserves permanency. They have not visited with [the child] since early April. A warrant is active for [the mother's] arrest. [The father] has performed poorly on probation since October 2019 and has refused DHS services.
>
> The parents appear to have no interest in permanency that includes reunification. Although the parents have squandered the last five months, there may be time for them to demonstrate an ability to reunify by their immediate and concerted effort to engage in services that will assist them with reunification. However, the court finds on the record made today that termination is in [the child]'s best interests.

The court directed the State to petition for termination of parental rights.

At the conclusion of the termination hearing in November 2020, the court entered its order terminating the mother's and the father's parental rights. It found that the parents were "hostile" both to the services offered to them and to the service providers and the DHS case manager. The court noted that their visits with the child remained supervised and that both were inconsistent in visiting the child, failing to participate in visits for extended periods of time. As a result, their parenting ability remained unchanged from the time of removal. The juvenile court found the State proved the grounds for terminating parental rights under Iowa Code section 232.116(1)(e), (g), and (h) as to the mother and Iowa Code section 232.116(1)(e) and (h) as to the father.

Termination of parental rights requires a three-step analysis. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The first step is to determine if the State proved one of the grounds for termination under section 232.116(1). *See id.* Neither parent challenges the State's proof of the grounds for termination. "Where a party has failed to present any substantive analysis or argument on an issue, the

issue has been waived." *L.N.S. v. S.W.S.*, 854 N.W.2d 699, 703 (Iowa Ct. App. 2013).

Once the grounds for termination have been proved, we must decide whether termination is in the child's best interests considering the factors set forth in section 232.116(2). *See D.W.*, 791 N.W.2d at 706-07. In making the best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The "defining elements" of the best-interests determination are the child's safety and "need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (citation omitted).

The father contends termination is contrary to the child's best interests. He argues there is no evidence that he places the child at risk of adjudicatory harm while the child is out of his custody. But "[l]ong-term foster care is not preferred to termination of parental rights." *In re R.L.*, 541 N.W.2d 900, 903 (Iowa Ct. App. 1995). The father claims that he expects to be released from custody in the near future and he believes he can obtain suitable housing and secure employment. But the father's idealized view of the future conflicts with his past performance. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (noting that insight into what the future likely holds for a child if returned to a parent can be gained from evidence of the parent's past performance, which may be indicative of the quality of future care that parent is capable of providing). Even assuming the father is released and obtains housing and employment as he anticipates, the child will remain at risk if placed in the father's care unless the father addresses his drug use and mental

health. The father has been unwilling to do so in the past. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (citation omitted); *accord In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989) (noting that "patience on behalf of the parent can quickly translate into intolerable hardship for the child[]"). We agree that the child's best interests are served by terminating the father's parental rights.

We turn then to the final step of the termination analysis. First we must determine whether one of the situations set forth in section 232.116(3) exists; if so we need not terminate parental rights. *See D.W.*, 791 N.W.2d at 707. The decision to preserve parental rights under section 232.116(3) is permissive, not mandatory, and depends on the facts of each case. *See A.S.*, 906 N.W.2d at 475.

Both the mother and the father argue termination is unnecessary because "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The juvenile court rejected this claim, finding "there is no substantial or meaningful bond existing between [the child] or either parent." The court observed that the child is more bonded to his foster parents than to the mother or the father. The court found this "is the direct result of his parents' inability to establish and maintain a safe and appropriate relationship with him." We agree.

Finally, the mother contends the DHS failed the burden imposed by Iowa Code section 232.84(2), which requires that the DHS "exercise due diligence in identifying and providing notice to the child's" relatives within thirty days of

transferring custody to the DHS for placement outside the home. The purpose of the notice is to clarify the relatives' options and afford them the opportunity to come forward to be considered as a viable placement option.[1] *See In re N.V.*, 877 N.W.2d 146, 151-52 (Iowa Ct. App. 2016).

The mother concedes she never raised this claim before the juvenile court, which ordinarily prevents us from addressing it on appeal. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases."). But the mother argues the failure stems from ineffective assistance of trial counsel. *See, e.g.*, *In re D.W.*, 385 N.W.2d 570, 579-80 (Iowa 1986) (applying the *Strickland* standards of ineffective assistance—requiring a showing that counsel's performance was deficient and actual prejudice resulted—to CINA and termination proceedings). She argues that but for counsel's failure to challenge the lack of relative notice, the child could have been placed with a relative, eliminating the need to terminate her parental rights. *See* Iowa Code § 232.116(3)(a) ("The court need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child.").

The record indicates that the DHS sent notice of the child's removal to the paternal relatives in August 2019, including two paternal uncles recommended by the mother, but determined that none were appropriate placements for the child.

---

[1] The question of whether a parent has standing to raise a challenge to the DHS's failure to provide relative notice under section 232.84(2) has not been decided. *See generally In re R.B.*, 832 N.W.2d 375, 382 (Iowa Ct. App. 2013) (assuming without deciding that a father may object to the DHS's failure to notify the mother of the proceedings). Neither the guardian ad litem nor the State challenges the mother's standing.

The mother never suggested any maternal relatives. The only mention of any maternal relatives is in the mother's testimony at the termination hearing, when she identified the maternal grandparents in the courtroom and noted the child has a half-sister who is in the care of that child's father.

The guardian ad litem argues that the DHS met the requirements of section 232.84(2) by providing notice to the paternal relatives the mother identified as potential placements. But the "adult relatives suggested by the child's parents" are only one category of relative that the statute requires the DHS to provide notice. Iowa Code § 232.84(2); *R.B.*, 832 N.W.2d at 381. The DHS's obligation to identify and notify relatives is not limited to those relatives suggested by the child's parents. *See R.B.*, 832 N.W.2d at 381. The DHS must also identify and notify "the child's *grandparent*s, aunts, uncles, adult siblings, [and] *parents of the child's siblings*." Iowa Code § 232.84(2) (emphasis added). And because the onus is on the DHS to identify relatives, not the parents, the mother's failure to provide the DHS with information about the maternal relatives does not eliminate the DHS's responsibility. *See R.B.*, 832 N.W.2d at 381.

It is clear that the DHS was required to exercise due diligence to notify the child's maternal grandparents and the father of the child's sibling of a transfer of the child's custody. There is nothing in the record to indicate it did so. Because this issue was not timely raised, we have no way of knowing whether these maternal relatives would be an appropriate placement for the child or if the DHS would have placed the child in their care if due diligence had been exercised. However, "[r]elative notification does not turn on whether relatives would ultimately prove to be viable placement options; notification affords the relatives an

opportunity to come forward so that it can be determined whether they are viable placement options." *Id.* at 382.

If the DHS failed to exercise due diligence to identify and notify the maternal relatives, counsel breached a duty by failing to raise the issue below. But as to whether the mother was prejudiced by any breach, the record is insufficient. We can only speculate as to whether and how the outcome would have changed had counsel objected to the lack of relative notice because the court may terminate parental rights even when a child is in the care of a relative. *See A.S.*, 906 N.W.2d at 475.

Furthermore, section 232.84(2) does not specify a remedy for its violation. *See R.B.*, 832 N.W.2d at 382. In an unpublished opinion, this court addressed a claim regarding the DHS's failure to provide notice on similar facts. *See In re N.P.*, No. 12-0805, 2012 WL 3196125, at *1 (Iowa Ct. App. Aug. 8, 2012) (addressing a claim that the DHS failed to comply with the notice requirements raised for the first time on appeal following termination of the father's parental rights). We declined the father's request to reverse the termination order because "[a]ddressing the failings of the adults in this case by a reversal of the juvenile court's termination order would run counter to the over-arching consideration in all termination of parental rights cases—the best interests of the children." *Id.* at *3. Instead, we held

> the failing by the Department can and should be minimized by requiring the Department to immediately notify the designated family members identified in section 232.84. The family members should be notified that the court has terminated the parental rights of N.P.'s parents; the child's placement shall remain with the foster family unless "the court orders otherwise based upon the best interests of the child" as provided in section 232.120; and that they may seek to

> serve as permanent adoptive parents.  The notice shall also include any other applicable rights or options otherwise required by section 232.84(3) which have not dissipated by the delay in giving such notice.

*Id.*  As in *N.P.*, we find that failing to provide notice under section 232.84(2) is "inexcusable."  *See id.* at *2.  But given the course of the proceedings, the child's best interests are served by affirming the termination order with the same directions set forth in *N.P.*, quoted above.  *See id.* at *3.

**AFFIRMED ON BOTH APPEALS AND REMANDED WITH DIRECTIONS.**