**IN THE COURT OF APPEALS OF IOWA**

No. 21-1102
Filed November 23, 2021

**IN THE INTEREST OF E.M.,**
**Minor Child,**

**S.M., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Louisa County, Emily Dean, District

Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kimberly A. Auge of The Auge Law Firm, Fort Madison, for appellant

mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Reyna Wilkens of Wilkens Law Office, Fort Madison, attorney and guardian

ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights.[1]  We review termination-of-parental-rights proceedings de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *Id.* (citation omitted).  "[O]ur fundamental concern is the best interests of the child."  *In re B.T.*, 894 N.W.2d 29, 33 (Iowa Ct. App. 2017) (citation omitted).

S.M. is the mother of E.M., born in 2016.  In March 2020, a report to the department of human services (DHS) alleged both S.M. and the child's father, T.M., had been using methamphetamine while caring for the child.  The mother tested positive for methamphetamine during the resulting child-abuse assessment.  On May 28, the mother again tested positive for methamphetamine, and the child was removed from both parents' custody under a safety plan.  E.M. was adjudicated CINA.

The mother tested positive for methamphetamine in sweat patch tests and for marijuana in urine tests several times between March and June 2020.  She admitted using marijuana daily during those months.  A June substance-abuse evaluation recommended outpatient treatment, and the mother began substance-abuse treatment in September.  The mother stopped attending treatment without approval and tested positive for methamphetamine again in November.

---

[1] After this appeal was transferred to this court, the mother filed a motion to stay proceedings to allow her to order transcripts from a number of hearings in the underlying child-in-need-of-assistance (CINA) proceedings.  The appellate record concerning the termination of parental rights is complete and, therefore, we deny the motion to stay.

Subsequently, she refused to participate in further drug testing, stating she did not consider the tests accurate. The mother completed a new substance-abuse evaluation in April 2021 and was to restart treatment in May. Starting in April, she participated in mental-health and family therapy.[2] After initially signing release-of-information forms for her substance-abuse treatment program, the mother withdrew her consent and refused to sign any new releases for DHS.

The mother's early cooperation soon turned to resistance to services. She became more combative toward DHS and service workers. Two attorneys withdrew from representing the mother citing a breakdown in the attorney-client relationship; the attorneys cited "irate" and "spirited" messages from the mother.

A termination-of-parental-rights petition was filed on April 30. The mother was offered a six-month extension to achieve reunification with the child if she agreed to comply with drug testing and services. She refused. The mother filed two motions to continue the termination trial, which were both denied. After a two-day permanency and termination hearing in June and July, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(f) (2021). The mother appeals.

**Motions to continue.** The mother contends the juvenile court abused its discretion in denying her motions to continue and her request to keep the record open for additional testimony. "[O]ur review of a district court's denial of a motion for continuance is for an abuse of discretion." *In re M.D.*, 921 N.W.2d 229, 232

---

[2] The mother did not sign a release to provide the State with a copy of her mental-health evaluation.

(Iowa 2018). "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable.'" *Id.* (citation omitted).

The mother had three attorneys in less than a year. The first attorney withdrew in November 2020 and the second attorney in May 2021. The mother's third attorney, who was appointed on May 13, requested a continuation of the permanency and termination hearing scheduled for mid-June. The court denied the motion, noting the mother had requested the second attorney's withdrawal and the permanency hearing had already been continued once.[3]

The day before the termination hearing, the State offered the mother a six-month extension if she would undergo drug testing and comply with services and recommendations; she declined the offer.[4] On the morning of the first day of the termination hearing, the mother had an outburst at the courthouse before the hearing. When the hearing started, the court made clear it would not tolerate outbursts and would hold those interrupting the proceedings in contempt of court. Late on the first day, the mother had an outburst during the father's testimony, stating, "I'm done," and she walked out of the hearing.

The mother was scheduled to testify on the second day of the termination hearing. One week before hearing was to resume, the mother's attorney requested a continuance, asserting a petition for the involuntary drug and mental-health commitment of the mother had been filed. The grandmother reported the mother was hospitalized; the mother's counsel was unable to reach her but had

---

[3] The permanency hearing was continued at the request of the child's guardian ad litem to be held in conjunction with the termination hearing.
[4] The father complied with testing and was given an extension.

determined the county sheriff's office had not picked the mother up on the pending application for commitment. The court denied the continuance as the mother's absence appeared voluntary, and she was deemed to be participating through her counsel.

After presenting testimony from two of the mother's family members, counsel asked the court to schedule a third date for the termination hearing to allow the mother to testify and offer evidence. At the time, counsel had no additional evidence to present beyond the mother's testimony and exhibits, which required the mother's testimony to establish foundation. The court verified with the sheriff's office the mother had not been picked up, ruling it would not "allow for the reopening of the mother's case-in-chief in order to allow for her testimony should she choose to attend a different day. I don't allow people to come and go from their court proceedings as they choose."

"A motion for continuance shall not be granted except for good cause." Iowa Ct. R. 8.5; *see also In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2003). The juvenile court's grounds for denying the motions for a continuance are neither untenable nor unreasonable, and it did not abuse its discretion in denying the motions.

**Grounds for termination.** The mother claims the State failed to establish the grounds for termination by clear and convincing evidence. To terminate under Iowa Code section 232.116(1)(f), the court had to find the child is at least four years old, has been adjudicated CINA, has been out of the parent's custody for at least twelve of the last eighteen months, and cannot be returned to the parent at the present time. The mother only contests the final element, asserting the child could

have been returned to her care. She disputes the court's finding she cared for the child while under the influence of methamphetamine or marijuana and argues "only speculation exists as to any alleged continued substance abuse by the mother."

A parent's past performance "may be indicative of the parent's future capabilities." *In re W.M.*, 957 N.W.2d 305, 315 (Iowa 2021) (citation omitted). The mother admitted to using marijuana daily and tested positive for methamphetamine multiple times in the first months of the CINA proceedings while the child was still in her care.[5] Any "speculation" of continued use is based on her multiple positive tests, refusal to take additional tests, and failure to complete any substance-abuse treatment. The mother had an outburst and walked out during the first day of the hearing and did not return for the second day; she was not even present to show the child could be returned to her care. The mother refused to cooperate with DHS, participate in testing, or utilize services to address her substance abuse. The mother's mother and aunt testified at the termination hearing that S.M. was not in a position where the child could safely be returned to her care.

We find the child could not be returned to the mother at the time of the hearing, and termination was proper under Iowa Code section 232.116(1)(f). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

**Best interests of the child.** The mother asserts, based on her bond with the child and the lack of "evidence of any lack of a reasonable degree of care when

---

[5] Not using the drug in front of the child does not mean the parent was not under the influence of the drug while caring for the child.

supervising the [child]," that termination of her parental rights is not in the child's best interests.

"When we consider whether parental rights should be terminated, we 'shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *M.W.*, 876 N.W.2d at 224 (quoting Iowa Code § 232.116(2)). We also consider the integration of the child into family placement. *Id.* "[I]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *W.M.*, 957 N.W.2d at 314 (citation omitted).

DHS characterized the mother's attitude as committed to her child but not committed to services. It is undisputed the mother and child have a strong bond, and the mother displayed good parenting skills during visits. However, after the initial drug tests came back positive, she focused on proving the tests were false and DHS was wrong rather than seeking treatment to stop her addiction.

Throughout the case, the mother had outbursts in court and at service providers and sent numerous irate messages to her attorneys, the family support services workers, and DHS. She has actively resisted cooperating with DHS, even though she was warned the consequence could be termination of her parental rights. The mother puts her own anger above the child's needs and is not the best placement for the child's long-term nurturing and growth. Termination is in the child's best interests.

**Guardianship.** The mother raises the option of placing E.M. in a guardianship with the maternal grandmother or great-aunt. The grandmother testified she sought guardianship throughout the CINA proceedings. The child was placed with the maternal great-aunt for the first seven months after removal.[6] While the potential guardians are open to the possibility, DHS indicated to the court it "is not willing to do guardianship of E.M. due to [the child's] age and [E.M.] needing a permanent placement."

"[A] guardianship is not a legally preferable alternative to termination." *B.T.*, 894 N.W.2d at 32. Relevant factors to consider include the age of the child, the length of removal, the viability of other permanency options, the relationship between the parent and the potential guardian, and the best interests of the child. *See W.M.*, 957 N.W.2d at 315; *In re A.S.*, 906 N.W.2d 467, 478 (Iowa 2018).

Here, the child is young and has been in their current placement since January, with another seven months before that in the great-aunt's care. Given the mother's hot-and-cold relationship with her relatives, her hostility toward ongoing court involvement, and her ability to challenge the guardianship, we do not find it a proper permanency plan. We affirm the termination of the mother's parental rights.

**AFFIRMED.**

---

[6] The great-aunt had set an end-date for placement for family reasons, then changed her mind just before the child was moved to a new placement.