**IN THE COURT OF APPEALS OF IOWA**

No. 22-0411
Filed May 11, 2022

**IN THE INTEREST OF K.H.,**
**Minor Child,**

**S.M., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Louisa County, Emily S. Dean, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Kimberly A. Auge of The Auge Law Firm, Fort Madison, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Reyna Wilkens of Wilkens Law Office, Fort Madison, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**TABOR, Judge.**

The juvenile court terminated Stephanie's parental rights to her thirteen-year-old daughter K.H. Stephanie now challenges the court's denials of her motions to continue. She claims the State did not prove K.H. could not be returned to her care. She also argues that termination was not the "least restrictive disposition" and the Iowa Department of Human Services (DHS) did not make reasonable efforts toward reunification. Like the juvenile court, we find Stephanie's methamphetamine addiction imperiled K.H.'s well-being. So we affirm the termination order.[1]

**I. Facts and Prior Proceedings**

The DHS became involved with this family in April 2020 based on concerns that Stephanie and her husband Travis were using methamphetamine and marijuana while caring for K.H. and her younger half-sister E.M. Stephanie tested positive for methamphetamine use.[2] At first, Stephanie and Travis agreed to participate in family preservation services. But over time their commitment to services waned and changed to active resistance. The case progress reports feature a litany of text messages and retellings of the parents berating service providers and expressing grievances with the situation and the DHS requirements.

---

[1] Termination reviews are de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). We give weight to the juvenile court's fact findings, but they do not bind us. *Id.* We review the denied motions to continue for an abuse of discretion. *Id.* "A court abuses its discretion when 'the decision is grounded on reasons that are clearly untenable or unreasonable . . . .'" *Id.* (citation omitted). Above all, our fundamental concern is the best interests of the child. *Id.*

[2] This investigation led to three founded child abuse assessments for denial of critical care. In that incident, Stephanie and Travis were smoking marijuana around the children, and K.H. found a bag of marijuana easily accessible to four-year-old E.M.

According to the case plan, Stephanie and Travis were to stay sober and meet the children's basic needs. But in May 2020, when Stephanie's sweat patch test came back positive for methamphetamine, E.M. was removed from her care. K.H. stayed with her mother until August when the guardian ad litem successfully petitioned to have her removed as well. Since then, K.H. has lived with her father, her stepmother, their two sons, and E.M.

After K.H. and E.M. were adjudicated as children in need of assistance (CINA), Stephanie made little effort to address her addiction. She tested positive for drugs throughout 2020 and 2021. She also missed many testing dates. Still, she denied her drug use was a problem. And despite being asked to undergo substance-abuse assessment since April 2020, she waited until April 2021 to complete an evaluation, which recommended outpatient treatment. She then attended one treatment session and did not return.

On the mental-health front, Stephanie has shown a similar lack of follow through. She completed evaluations in October 2020 and April 2021, but she did not follow the recommendation for continued therapy.

In July 2021, the juvenile court terminated Stephanie's parental rights to E.M.[3] Following that development, Stephanie rejected services. When asked to drug test in September, she told the DHS worker, "I'm pretty sure I am no longer associated with the Department. I will do all of my own drug testing mental health

---

[3] The court granted the State's motion to dismiss the petition as to Travis. We affirmed the termination of Stephanie's rights. *In re E.M.*, No. 21-1102, 2021 WL 5458035, at *4 (Iowa Ct. App. Nov. 23, 2021).

the services that you supposedly provide on my own without your assistance or your input thank you very much I'm terminated remember."

Meanwhile, K.H. was working through the trauma she experienced in Stephanie and Travis's home. She saw a counselor on and off. Stephanie tried to set up family therapy, but K.H. told her counselor that she did not want contact with her mother. When K.H. returned to counseling in late 2020, K.H. still resisted seeing her mother, expressing concern that she might be placed back in Stephanie's care. Her counselor reported "the idea of having contact [with Stephanie] was distressing and anxiety-producing" for K.H. The counselor also recommended Stephanie attend individual counseling to address her own issues before reconnecting with K.H.[4] The counselor also observed K.H. to be happy in the care of her father and stepmother. She noted, "They both have shown patience and understanding with [K.H.]," and they "offer a more stable home for K.H."

After twenty-two months of CINA proceedings, the court terminated Stephanie's parental rights to K.H. under Iowa Code section 232.116(1), paragraphs (b), (d), (f), (g), (i), and (*l*) (2021). She now appeals.

## II. Analysis

### A. Motions to Continue and Request to Keep the Record Open

Stephanie contends the juvenile court erred in denying her motions to continue. "A motion for continuance shall not be granted except for good cause." Iowa R. Juv. P. 8.5; *see also In re R.B.*, 832 N.W.2d 375, 378 (Iowa Ct. App. 2013). We will reverse only for an abuse of discretion. *M.D.*, 921 N.W.2d at 232.

---

[4] Because Stephanie did not do so, she has not had visitation with K.H. since December 2020.

Stephanie focuses on her motions to continue and to keep the record open in the joint termination trial for E.M. and permanency hearing for K.H. held in May 2021. We addressed those issues in her appeal of E.M.'s termination. *See E.M.*, 2021 WL 5458035, at *2. We need not return to them here.[5]

In K.H.'s case, the termination trial was set for February 7, 2022, at 1 p.m. On February 2, Stephanie moved to continue for lack of service, but the next day the State filed the affidavit of service, showing Stephanie accepted service on January 29. The juvenile court denied the motion, and we find no abuse of discretion in that decision.

On February 4, Stephanie filed a new motion to continue, alleging she had a fever, rash, sore throat, cough, and earache. On the morning of the hearing, the court denied the motion "pending a doctor's excuse" but allowed the mother to appear by phone. Later that morning, Stephanie renewed her motion to continue, stating she was still ill but not providing a doctor's note. She also requested that witnesses be allowed to appear by telephone, asserting that her sister, mother, and stepfather could not be "personally present."

The court denied the motion to continue. It also denied Stephanie's request for telephonic appearance of witnesses, explaining "This is an in-person

---

[5] We noted Stephanie had delayed the proceedings several times. *E.M.*, 2021 WL 5458035, at *2. She was not present for the termination proceeding in E.M.'s case. *Id.* For good cause, she represented to the juvenile court that she had been involuntarily committed, but the court said it "verified with the sheriff's office the mother had not been picked up." *Id.* Accordingly, the court ruled "it would not 'allow for the reopening of the mother's case-in-chief in order to allow for her testimony should she choose to attend a different day. I don't allow people to come and go from their court proceedings as they choose.'" *Id.* We found no abuse of discretion. *Id.* The same judge was similarly frustrated with Stephanie's conduct at the termination hearing.

proceeding." Despite later finding "her allegations of illness not credible, based upon her history of deceit throughout this case," the court allowed Stephanie to appear by telephone.

But Stephanie's telephone participation was problematic. The audio quality was poor. Portions of her testimony were inaudible. After several pauses to fix the audio and requests for Stephanie to slow down so the court reporter could preserve the record, the court stopped her testimony:

> [I]t's not possible for the reporter to get this down, and that's not going to make for any kind of a record should this case need to be reviewed by an alternate court. In fact, I'm not getting most, three quarters of it down. The court's order today was clear that although this case has been set for quite some time, I had indicated that had I been presented with a doctor's verification I would consider a motion to continue. I did not receive that. So I had allowed for [Stephanie] to choose to participate telephonically, and she has.
> There is nothing stopping her from coming today. Everyone's wearing masks these days anyway to prevent the spread of viruses. So, I'm going to cut off the testimony at this time. It simply is not working, and [Stephanie] has been unable to get to a better form of device to make her testimony clear.
> I will allow for Ms. Auge to make a professional statement on [Stephanie's] behalf. But beyond that, I simply—I'm not going to allow for any further telephonic testimony with this quality.

The court allowed Stephanie's attorney to offer other evidence. In response, the attorney offered documentation of Stephanie's living situation to establish that she had a permanent home. She then renewed her motion to continue so that Stephanie could give testimony, which the court denied.

On appeal, Stephanie argues she did not have time to obtain a doctor's note. And because of her absence, she contends the record is missing "critically important, relevant, and material" information. But she does not specify what information she would have offered if present.

This record does not show the juvenile court abused its discretion.[6]  It was willing to find good cause to continue the trial for a genuine illness, which Stephanie could not verify.  Without that proof, the court disbelieved her reason.  We defer to that credibility finding.  *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  And although the court allowed Stephanie to appear by telephone, her connection was beset by audio difficulties for reasons that are unclear.[7]  Still, she listened to most of the hearing.  The court handled the situation reasonably.

**B. Grounds for Termination**

Next Stephanie contends that the State did not offer "substantial evidence to find [K.H.] could not be returned to [her], that termination was the least restrictive disposition under the circumstances, and that the Department made reasonable efforts at reunification."  Her argument in support of these issues is unfocused and confusing.  Still, we will try our best to address her claims.

We start with her least-restrictive-disposition argument.  She cites Iowa Code section 232.99(4), which states a preference for keeping children with their parents.  But that statute applies to CINA proceedings.  *See* Iowa Code § 232.102(4)(a) ("Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian.").  By contrast, in termination cases, the child's interests trump family reunification.  *See In re L.T.*, 924 N.W.2d

---

[6] Stephanie mentions her "basic and fundamental rights to present and defend her case," but the argument is so underdeveloped, we consider it waived.  *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[7] The court warned Stephanie to stop audio recording the hearing for posting on her internet blog and threatened to hold her in contempt if she continued.

521, 529 (Iowa 2019). Because the least-restrictive standard does not relate to the issues in this appeal, it is not relevant to our review today.

We next turn to Stephanie's substantial-evidence argument. We read her reference to "could not be returned" as attacking the fourth prong of the termination ground set out in Iowa Code section 232.116(1), paragraph (f).[8] And we consider her reference to "reasonable efforts" as we evaluate the State's "ultimate proof" that K.H. could not be safely returned under paragraphs (f) and (g). *See L.T.*, 924 N.W.2d at 527. The State contests error preservation on these arguments.

Even if Stephanie preserved error on these two claims, she leaves several grounds uncontested. Because she fails to challenge termination on those other grounds, we may affirm without further analysis. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (finding court did "not have to discuss this step" where parent did not dispute existence some statutory grounds). Likewise, we need not address the reasonableness of the DHS efforts toward reunification.

## C. Other Issues

It may be a generous reading of Stephanie's petition on appeal, but we venture to address her random mentions of K.H.'s best interests. In assessing best interests we consider the child's safety, the best placement for furthering her long-term nurturing and growth, as well as her physical, mental, and emotional condition and needs. *See* Iowa Code § 232.116(2); *see P.L.*, 778 N.W.2d at 37. Security and the need for a permanent home mark the "defining elements" in a child's best interests. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J.,

---

[8] As authority for this contention, Stephanie cites Iowa Code section 232.102, referenced in Iowa Code section 232.116(1)(f)..

concurring specially). Like the juvenile court, we find the best long-term placement for K.H. is with her father and stepmother, who have provided a stable and nurturing environment. And as the juvenile court points out, it is K.H.'s reasonable preference to remain in that home. *See* Iowa Code § 232.116(2)(b)(2).

To counter, Stephanie points to a mental-health crisis that K.H. suffered a few months before the termination hearing, trying to cast blame on the father's care. But as the State notes, at the hospital for that crisis, K.H. expressed severe anxiety about the lack of permanency in her life. Termination is the best means to achieve that desired permanency.

Finally, in a single sentence, Stephanie contends the juvenile court should have ordered "an additional six month extension." But that fleeting mention does not adequately raise the issue. Even if it did, continuing permanency is not warranted. Under section 232.117(5), the juvenile court may delay permanency for up to six months under section 232.104(2)(b) as an alternative to terminating parental rights. *See In re N.J.*, No. 19-1999, 2020 WL 2988237, at *3 (Iowa Ct. App. June 3, 2020). A reprieve is appropriate if the juvenile court can point to "specific factors, conditions, or expected behavioral changes" that justify believing the need for removal from parental care would no longer exist after that time. Iowa Code § 232.104(2)(b). But no such factors exist here. Stephanie has made no progress in her parenting goals since this case opened twenty-two months prior to the termination hearing. She has consistently tested positive for illegal drugs or refused testing. She is hostile toward DHS services and service providers. We have no reason to believe the need for removal will not exist in six months.

Finding no grounds for reversal, we affirm the termination of parental rights.[9]

**AFFIRMED.**

---

[9] If Stephanie intended to raise other issues, including issues from the permanency order, we decline to reach them. *See In re T.R.*, 705 N.W.2d 6, 11 (Iowa 2005) (holding permanency order is not final for appeal purposes and its provisions "will inure or be subsumed in the termination order"). Stephanie's petition on appeal lists findings with which she disagrees but offers little argument, thereby contravening the appellate rules. *See* Iowa R. App. P. 6.1401-Form 5 (requiring parent to "state what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support" that position). We cannot take an advocacy role on her behalf. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (holding broad argument was insufficient to identify errors).